No. 32,697

CAMILLE FOSTER CRAIG, *Appellee*, v. ROY E. CRAIG, *Appellant*.

(56 P. 2d 464)

Opinion filed April 11, 1936.

*Hal E. Harlan, A. M. Johnston,* both of Manhattan, and *James P. Coleman,* of Junction City, for the appellant.

*James V. Humphrey* and *Arthur S. Humphrey,* both of Junction City, for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This was an action for divorce, alimony, custody of and support for minor child, and attorney fees.

Plaintiff, the wife, prevailed in all respects except as to decree of divorce. Plaintiff appeals from the order denying her a decree of divorce. Defendant cross-appeals from the order granting plaintiff alimony. He insists plaintiff is not entitled to a decree of divorce and therefore judgment for alimony must be reversed.

The ground alleged for divorce was extreme cruelty. The trial court found defendant guilty of extreme cruelty as alleged in the petition, but declined to render judgment for divorce. The theory upon which the trial court withheld a decree of divorce is disclosed by the following finding of fact:

"The defendant is an officer in the United States army, and for more than one year prior to the commencement of this action was stationed at Fort Riley, Kansas, pursuant to military orders; and the plaintiff accompanied him there and had been there with him for more than one year prior to the commencement of this action. At no other time or place had the plaintiff or the defendant ever resided in the state of Kansas. And the defendant was at Fort Riley solely in compliance with his orders as an officer in the United States army."

The trial court concluded as a matter of law neither of the parties to this action were at any time *domiciled* on the Fort Riley Military Reservation or elsewhere in the state of Kansas, and hence the court lacked jurisdiction to grant a divorce.

In the view we take of this lawsuit, it is unnecessary to determine the correctness of defendant's contention that permanent alimony may not be awarded when a divorce is refused. In the event a divorce should have been decreed, it follows some substantial provision for the wife was not only proper but imperative. (*Savage v.*

*Savage,* 141 Kan. 851, 44 P. 2d 272; *Holder v. Holder,* 143 Kan. 79, 53 P. 2d 806.)

R. S. 1933 Supp. 60-1502, under which this action was brought, reads:

"The plaintiff in an action for divorce must have been an actual resident in good faith of the state for one year next preceding the filing of the petition, and a resident of the county in which the action is brought at the time the petition is filed, unless the action is brought in the county where the defendant resides or may be summoned: *Provided,* That any person who has been a resident of any United States army post or military reservation within the state of Kansas for one year next preceding the filing of the petition may bring an action for divorce in any county adjacent to said United States army post or military reservation."

Everything preceding the proviso in the above law constituted the old statute. The proviso was added by amendment in 1933. The parties had resided on the Fort Riley military reservation for more than one year prior to the commencement of this action. Geary county, in which the action was brought, adjoins the reservation.

Did the district court of Geary county have jurisdiction to enter a decree of divorce? Defendant contends it did not. He insists the term "resident," in the proviso means "actual resident," as used in the old part of the statute. He urges the district court had no jurisdiction to grant a divorce unless plaintiff had acquired such "actual residence" or "domicile" on the reservation as is contemplated in any case wherein a person sues for divorce who has resided in the state but outside the reservation. For a definition of the word "resident," as contemplated by the divorce statute of this state, defendant relies on the early case of *Carpenter v. Carpenter,* 30 Kan. 712, 2 Pac. 122, in which it was held:

". . . plaintiff was at the time of the commencement of this action 'a resident' or 'an actual resident' of Neosho county, Kansas, within the meaning of sections 54 and 640 of the civil code; that these sections contemplate the actual and permanent residence of a party, and not merely the temporary and official residence which a party may adopt during the time of his holding a federal office." (Syl. ¶ 1.)

Defendant earnestly contends the instant case is also governed by the decision of this court in the case of *Pendleton v. Pendleton,* 109 Kan. 600, 201 Pac. 62. We are reminded the residence of plaintiff in that case is identically the same as that of plaintiff in the instant case. It was there said:

". . . residence of the wife of a captain of the United States army at Fort Riley, to which military post he was assigned for duty, was not domicili-

ary, within the meaning of the divorce statute, which requires domicile of the plaintiff in the state and in the county in which the petition is filed." (Syl.)

These decisions were, of course, rendered prior to the 1933 amendment. Is it to be contended the legislature was without power to determine who was entitled to use its courts, for what purpose and under what conditions? Federal courts have no jurisdiction over divorce. The states have full and absolute power to regulate and dissolve the marriage status by appropriate legislation not in contravention of public policy. The procedure for obtaining a divorce varies in the respective states of the union. Amendments are enacted from time to time to meet the changing thought and deepening conviction of communities concerning conditions which in their judgment require relief. All legislation is presumed to be prompted by a specific purpose and intended to accomplish a definite result. It must be assumed the legislature in this instance did not intend a futile thing. It must be assumed the legislature had in mind some specific remedy, some definite relief, when it enacted this amendment. What was that purpose? Can the intent be ascertained? If so, it is the duty of courts to make it effective if possible to do so.

In the first place it must be assumed the legislature knew a population of approximately 8,000 people resided on the two military reservations within this state. It must be further assumed the legislature fully realized the military personnel on these reservations was subject to constant change by military orders. It knew from the very nature of the service that persons residing there could not establish an actual permanent residence or domicile on a reservation. This conclusion is irresistible. It is folly to say that persons subject to military orders intended to remain on a military post beyond the term of assignment to that post. It must also be assumed the legislature thoroughly understood there were no federal laws governing the subject of divorce for persons residing on these reservations, irrespective of whether they resided thereon a single day or for a lifetime. Furthermore, it is reasonable to assume the legislature was thoroughly apprised of the full import of the decision in the Pendleton case. That decision simply meant that persons born and whose forebears were born on federal military reservations and who remained in military service in all probability would never acquire a domicile or actual residence of their own. It might be contended with some merit every person has a domicile somewhere

and that the domicile was that of his ancestors prior to entrance into military service. It will be readily observed such domicile, in all probability, would be highly impracticable for all parties concerned. On the other hand, the problem of the establishment of such domicile is surrounded by almost insurmountable difficulties. The result, for all practical purposes, is that many persons on military reservations are outside the law relative to actions for divorce. If divorce is to be permitted—and it is—what valid reason can be assigned for discrimination? And such is the effect, against some eight thousand people engaged in the service of their country. We are persuaded it was the intent and purpose of the amendment to remedy that precise condition.

Does the amendment itself aid in disclosing the intent ascribed to it? We think it does. The old portion of the statute which applies to others than those residing on military reservations requires "actual residence in good faith in the state for one year, . . ." Concerning the words "actual resident in good faith," this court, in the Pendleton case, said:

"Because the marital relation is one of profound interest to the state, and because the marital status virtually constitutes a *res* for purposes of jurisdiction over divorce, the legislature *intensified* the character of residence necessary to maintain an action for divorce by use of the term *'actual.'* The purpose evidently was to indicate that *permanency* which the word *'domicile'* denotes, and the court has already held that the divorce statute contemplates *domicile* of the plaintiff in the state for a year preceding the filing of the petition, and *domicile* in the county in which the petition is filed. (*Carpenter v. Carpenter,* 30 Kan. 712, 717, 2 Pac. 122.)" (p. 602.) (Italics inserted.)

It will be observed the words "actual" and "good faith" are entirely eliminated in the amended portion of the new law which applies only to residents on military reservations. That omission cannot be lightly regarded. It is most significant. It eliminates the express language on which the opinion in the Pendleton case rested. To the same extent the intensifying words were emphasized under the old law in the Pendleton case, we are obliged to emphasize the significance of their omission from the amendment in the instant case. It would, therefore, appear the purpose of the amendment was to cure the unsatisfactory status of these residents so clearly revealed by the decision in the Pendleton case. If that was not the intent and purpose then the amendment was a useless gesture.

In determining the intent of the legislature the court is not limited to a mere consideration of the words employed but should look to

the existing conditions, the causes which impelled the enactment, and to the objects sought to be attained. (*City of Emporia v. Norton,* 16 Kan. 236; *State v. Kelly,* 71 Kan. 811, 820, 81 Pac. 450; *Coney v. City of Topeka,* 96 Kan. 46, 149 Pac. 689; *Van Doren v. Etchen,* 112 Kan. 380, 211 Pac. 144; *State, ex rel., v. Davis,* 114 Kan. 270, 217 Pac. 905; *Sedgwick County Comm'rs v. Toland,* 121 Kan. 109, 245 Pac. 1019.) Applying the established rule of construction we are compelled to hold the intended meaning of the word "resident," insofar as the amendment only is concerned, was residence for the period of employment on the reservation (which, in order to obtain a divorce, could not be less than one year), and not "actual residence" or "domicile" which signifies permanence. Such construction conforms to what clearly appears to have been the legislative intent. Any other construction renders the amendment meaningless.

Defendant next contends if this construction be adopted then the amendment constitutes invalid special legislation and is unconstitutional as repugnant to section 17 of article 2 of the state constitution, which provides:

"All laws of a general nature shall have a uniform operation throughout the state; and in all cases where a general law can be made applicable, no special law shall be enacted; and whether or not a law enacted is repugnant to this provision of the constitution shall be construed and determined by the courts of the state."

The specific complaint of defendant is unless *actual residence* or *domicile* on the reservation is required, the amendment discriminates between persons residing on the reservation and those residing off the reservation within the state. It is insisted that is invalid special legislation. The contention is not sound. In the first place the amendment is not special legislation. Second, it is valid general legislation. The amendment applies to all within the state similarly situated. Its application is therefore general to the entire class it embraces. It is not a false or deficient classification, but a genuine, natural, reasonable and complete classification. It rests upon a substantial basis. It operates uniformly on all members of the class. It is neither arbitrary nor capricious. In discussing the question of special legislation this court, in *State v. Butler County,* 77 Kan. 527, 94 Pac. 1004, said:

"If, however, it operates uniformly on all the members of the class to which it applies it is not open to the objection, provided the classification adopted by the legislature is not an arbitrary or capricious one. The legislature has the

power to enact laws of a general nature which will be applicable only to a certain portion of the state or to a certain class of citizens." (p. 533.)

In the case of *Rambo v. Larrabee,* 67 Kan. 634, 73 Pac. 915, it was held:

"An act, to have a uniform operation throughout the state, need not affect every individual, every class, or every community alike. It is competent for the legislature to classify and adapt a law general ·in its nature to a class, but such classification must be a natural and not an arbitrary or fictitious one, and the operation of such general law must be as general throughout the state as are the *genera* therein provided for." (Syl. ¶ 5.)

See, also, *Cole v. Dorr,* 80 Kan. 251, 101 Pac. 1016; *State, ex rel., v. Kansas City,* 125 Kan. 88, 262 Pac. 1032; *State, ex rel., v. French,* 130 Kan. 464, 286 Pac. 204; 25 R. C. L. 815-818.

Defendant urges the state of Kansas has no authority to legislate concerning the subject of divorce on the reservation. In 1889 the state, except as to certain reserved subjects, ceded exclusive jurisdiction to the United States over and within all the territory known as the Fort Riley military reservation. (Laws 1889, ch. 150, sec. 1.) In the cession no specific reservation was made concerning the subject of divorce. It is urged, therefore, the state has completely surrendered its jurisdiction over the subject. In support of that view our attention is directed to a Maryland and a Georgia decision. (*Lowe v. Lowe,* 150 Md. 592, 133 Atl. 729, 46 A. L. R. 983; *Dicks v. Dicks,* 177 Ga. 379, 170 S. E. 245.) Insofar as the residence features of these cases are ·concerned, they are not helpful here. They turn on the subject of actual residence and domicile on the respective reservations. As heretofore indicated the amended portion of our divorce law was not intended to require actual residence or domicile on the reservation.

Does our divorce law, including the amendment, constitute an unlawful encroachment on federal jurisdiction? We think it does not. It neither violates nor infringes upon any existing act of congress. In *Barber v. Barber,* 62 U. S. (21 How.) 582, 61 L. Ed. 226, the supreme court declared:

"This court disclaims altogether any jurisdiction in the courts of the United States upon the subject of divorce or for the allowance of alimony, either as an original proceeding in chancery, or as an incident to a divorce *a vinculo,* or to one from bed and board."

The amendment in the instant case simply opens convenient courts of this state to those residing on reservations within the state. In other words, it provides a forum for the adjudication of domestic

difficulties. Inhabitants of the reservation are not obliged to invoke its jurisdiction. It is not mandatory they do so. That congress has power to legislate on the subject is not questioned. That it has not seen fit to do so is admitted. Approximately a half century has passed since the cession of this territory which now embraces a population of approximately 8,000 people. During this long period no federal provision has been made for the settlement of the domestic problems of these people. At least until state laws are superseded by appropriate federal legislation, the validity of existing legislation should be sustained. As heretofore stated, the Georgia case finally turned, not on the question of federal jurisdiction, but on the question of domicile. The Georgia case is not authority for defendant's contention on the subject of federal jurisdiction. In fact, it would appear the Georgia court favored the dissenting opinion in the Maryland case. That is, it favored upholding state legislation until congress elected to exercise its jurisdiction. In an analysis of that subject, the Georgia decision quotes with apparent approval from the dissenting opinion of the Chief Justice in the Maryland case, as follows:

"In no case that I have found has an inhabitant on a federal reservation been denied the private laws and remedies of the state court, where congress has furnished him no other." (p. 386.)

The chief justice in the Maryland case further said:

"Where they have been allowed, a basis for the allowance has been found in the principle of public law that, upon the transfer of territory from one government to another, the laws of the first government are continued in force, until superseded by laws of the second. This qualification on the transfer of jurisdiction seems to be recognized in all cases; and it is merely a rule of necessity. *United States v. Percheman,* 7 Pet. 51, 87 (8 L. Ed. 601, 617); Halleck, International Law, ch. 34, sec. 14." (p. 606.)

Although jurisdiction over this reservation was ceded to the United States, congress was not obliged to exercise it. Until existing laws are abrogated by the new sovereign they remain in full force and unimpaired. (*People v. Lent,* 2 Wheel. Cr. Cas. [N. Y.] 548; *Ft. L. Rld. Co. v. Lowe, Sheriff,* 27 Kan. 749; *Fort Leavenworth R. R. Co. v. Lowe,* 114 U. S. 525, 58 Ct. 995; *C. R. I. & P. Rly. Co. v. McGlinn,* 28 Kan. 274; *Chicago Pacific Railway Co. v. McGlinn,* 114 U. S. 542, 5 S. Ct. 1005; *Hoffman v. Power Co.,* 91 Kan. 450, 138 Pac. 632; 15 R. C. L. 113.

Divorce laws were in force over the territory occupied by the Fort Riley reservation prior to its cession to the United States. The

statute at that time provided for divorce on the ground of extreme cruelty, the ground relied upon in the instant case. The law also provided for alimony. The amendment made no change in the substantive law of divorce. It merely made possible the use of convenient courts for the enforcement of prior existing law. We therefore hold the trial court had jurisdiction to decree a divorce and to award alimony. Since the trial court found defendant had been guilty of extreme cruelty toward plaintiff, as alleged in her petition, the trial court is directed to enter a decree of divorce in favor of plaintiff, and pursuant to such decree is further directed to render a new judgment for alimony in accordance with the terms and provisions of the former award. It is so ordered.