In the Matter of the Estate of Fred B. Smidt, Deceased.

Surrogate's Court, Kings County, April 13, 1937.

*McKenzie, Peper & McKenzie* [*Alfred C. McKenzie* and *Frederick J. Peper* of counsel], for the petitioner Helen D. G. Plate, proponent.

*Laurence J. McGoldrick* [*Charles Berlin* of counsel], for the objectant Margaret I. Smidt, widow.

*Coudert Brothers*, for Maude P. Smidt, former wife.

WINGATE, S. The present motion again emphasizes the unfortunate results consequent upon the diversity of policies of the several States respecting divorces. The concrete relief sought is the dismissal of objections to the probate of a propounded document as the will of the decedent, which have been interposed by one who had been ceremonially married to him subsequent to the procurance from him of a Reno divorce by a former wife.

The facts are substantially undisputed. So far as the court deems them of importance, they may be summarized as follows: The decedent intermarried with one Maude V. Partridge on June 26, 1901. After a time, according to the affidavit of the lady, their matrimonial bark encountered stormy seas which resulted in a series of separations and partial reconciliations. As early as September 24, 1912, a formal separation agreement was executed by the parties. Certain statements are contained in the moving papers from which an inference of at least a partial reconciliation might be deduced, but the sources of these statements and the general atmosphere of the relations of the parties as generally disclosed in the moving papers are such as to disincline the court to place any emphasis on these alleged facts. In any event, in or about the year 1921, the final break in their marital relations appears to

have occurred, following which the decedent took up his residence with his sister, with whom he had resided at least intermittently during the intervening period. The places of subsequent sojourn of the wife are undisclosed.

According to her recital, her husband, in or about 1931, requested her to divorce him, and, upon her acquiescence, secured for her tickets to Reno, Nev., and financed her journey thither. She states that she departed from New York on May 2, 1931, and arrived in the metropolis famed for the severance of marital Gordian knots four days later. She remained there until the twenty-second day of June, on which date a hearing was had before the District Court of the Second Judicial District of Washoe county, Nev., which resulted in a decree of absolute divorce in her favor and against the decedent, who was represented in the action and filed an answer.

An exemplified copy of these proceedings has been filed in this court, from which it appears that in her verified complaint she alleged " that * * * the plaintiff * * * is now a *bona fide* resident and actually and corporeally residing, being and domiciled in the County of Washoe, State of Nevada."

The findings made by the court and upon which the judgment is based duplicate this recital of fact and contain the further conclusion of law that " the Court has jurisdiction of the cause of action and the parties thereto."

The lady's affidavit on the present application recites that on or about June thirtieth she left Reno and after a time returned to New York.

Thereafter, and on December 3, 1933, the decedent was ceremonially married to Margaret Waterman in Bloomfield, N. J., by its mayor, Charles H. Demarest. It is this latter lady whose objections to the probate of the present will the proponent seeks to have stricken from the record on the theory that the Reno divorce was invalid, and that consequently the subsequent marriage was void, with the result that the status of wife did not attach to her, wherefore she is not a person interested in the estate within the connotation of section 147 of the Surrogate's Court Act.

Since a court of a sister State entered a decree of divorce dissolving the marriage between the decedent and his first wife, its proceedings are presumptively entitled to full faith and credit in this State under section 1 of article 4 of the Federal Constitution, unless it be affirmatively demonstrated that the court so rendering the judgment was one which did not have jurisdiction of the cause of action and of the parties. (*Wisconsin* v. *Pelican Ins. Co.*, 127 U. S. 265, 291; *Hanley* v. *Donoghue*, 116 id. 1, 4.)

In the present instance the Nevada court unquestionably had jurisdiction of the parties; of the wife because she instituted her action there, and of the defendant since he appeared in such action by attorney and duly answered to the complaint. (*Jones* v. *Jones*, 108 N. Y. 415, 425; *Hunt* v. *Hunt*, 72 id. 217, 237.) In the case last cited the court observes generally that " jurisdiction of the person is got by the service of process upon the party personally within the territorial jurisdiction, or *by his voluntary appearance in the suit*." (Italics not in original.)

According to the prevalent conception, however, there must be more than mere jurisdiction of the parties to confer authority upon any given tribunal to dissolve the marriage relation. There must also be jurisdiction of the status. (*Bell* v. *Bell*, 181 U. S. 175, 177, 178; *Andrews* v. *Andrews*, 188 id. 14, 41.)

In other words, in addition to jurisdiction *in personam*, there must also be jurisdiction *in rem* or *quasi in rem*. Indeed, it might almost be said that greater stress, especially in this State, seems to be placed on this latter jurisdiction of the *rem* of the status than on that of the persons themselves.

In the ordinary marriage, where the parties are living together, this *rem* is deemed to exist within the jurisdiction of the marital domicile, which is the place of their abode with the intention of continuance. (*Matter of Newcomb*, 192 N. Y. 238, 250; *Dupuy* v. *Wurtz*, 53 id. 556, 562; *Matter of Rooney*, 172 App. Div. 274, 277; *Matter of Bennett*, 135 Misc. 486, 494, 495, and authorities cited.)

Since it is the legal obligation of the husband, within reasonable limitations, to supply his wife with the ordinary necessaries of life, it follows as a logical conclusion, still in the usual case, that the domicile of the wife and consequently the location of the marital *res* will follow and be found at the domicile of the husband. (*Cheever* v. *Wilson*, 9 Wall. 108, 123; *Barber* v. *Barber*, 21 How. [U. S.] 582, 595; *Cheeley* v. *Clayton*, 110 U. S. 701, 705; *Haddock* v. *Haddock*, 201 id. 562, 571; *Matter of Newcomb*, 192 N. Y. 238, 251.)

There is, however, a well-defined exception to this rule in those cases in which the parties have validly separated or where the husband has destroyed the unity of the marital *res* by his own wrongful act which has made the absence of the wife from the place which would otherwise be the marital domicile necessary or justifiable, either by abandonment of the wife or by the commission of such acts toward her as justify her refusal longer to live with him. In such situations the wife, by force of necessity, must establish a separate domicile, and her act in so doing accomplishes for practical purposes a removal of the marital *res* sufficient to authorize the court possessing jurisdiction at the domicile so established by her to exercise authority over it. (*Gray* v. *Gray*, 143 N. Y. 354, 359;

*Hunt* v. *Hunt*, 72 id. 217, 242, 243; *Cheever* v. *Wilson*, 9 Wall. 108, 124; *Post* v. *Post*, 149 App. Div. 542, 546; affd., 210 N. Y. 607; *Kaufman* v. *Kaufman*, 177 App. Div. 162, 163; *North* v. *North*, 47 Misc. 180, 181; affd., 111 App. Div. 921.)

The performance of such acts by the present decedent is inferentially demonstrated by the affidavit of the first wife on this application. Such being the case, she was at liberty to establish a domicile of her own either in the State of New York or elsewhere, and, if she did so, the courts of the locality where such new domicile was established would acquire a jurisdiction over the *res* of the marital status.

The question of present importance is: Did she exercise this right and did she become validly domiciled in Reno, Nev., thus conferring jurisdiction on its courts to dissolve her marriage to the decedent? The only direct answer to this question which is found in the record is her unequivocal direct sworn statement, contained in her complaint in the Nevada action, which states as of the time when she instituted that action, that she " is now * * * actually * * * domiciled in the County of Washoe, State of Nevada."

Her present affidavit, while not expressly negativing this asserted fact, seeks to have this court draw the inference that she deliberately perjured herself at the time. The facts which she states are such as might under ordinary circumstances raise an inference that such was the case, but opposed to any such inference is the true presumption of law, which has been said to be " one of the strongest presumptions in the law " (*Graham* v. *Graham*, 211 App. Div. 580, 583), that a valid union was consummated in New Jersey by the ceremonial marriage between the decedent and the respondent following the entry of the divorce decree. (*Fisher* v. *Fisher*, 250 N. Y. 313, 317; *Matter of Biersack*, 96 Misc. 161, 178; affd., 179 App. Div. 916; *Tracy* v. *Frey*, 95 id. 579, 596, 597; *Matter of Hinman*, 147 id. 452, 453; affd., 206 N. Y. 653; *Matter of Erlanger*, 145 Misc. 1, 6; *Matter of Smith*, 136 id. 863, 868.)

As against this true presumption of law any mere factual inference cannot prevail. (*Matter of Callahan*, 142 Misc. 28, 36; affd., 236 App. Div. 814; affd., 262 N. Y. 524; *Matter of Kotlik*, 152 Misc. 802, 805; *Matter of Krasnicki*, 154 id. 771, 772.)

It follows that on the facts of this case it must be determined that at the time the decedent consummated the ceremonial marriage with the respondent his previous marriage had been legally dissolved, wherefore the present objectant became his wife and is now within the description of section 147 of the Surrogate's Court Act. The motion is accordingly denied, with costs.

Enter order on notice in conformity herewith.