No. 63,771

In the Matter of the Marriage of SARAH BROWN, *Appellee*, and
WILLIE BROWN, *Appellant*.

(795 P.2d 375)

Opinion

filed July 13, 1990.

*David P. Troup*, of Weary, Davis, Henry, Struebing & Troup, of Junction City, argued the cause and was on the briefs for appellant.

*Charles W. Harper*, of Harper, Hornbaker & Altenhofen, Chartered, of Junction City, argued the cause and was on the briefs for appellee.

The opinion of the court was delivered by

ALLEGRUCCI, J.: This is a domestic relations action in which appellee Sarah Brown is seeking spousal support from appellant, Willie Brown. This action was originally filed as a divorce action but became a K.S.A. 60-1611 action after a Georgia court granted appellant a divorce. The district court found that it had jurisdiction and granted Sarah a judgment for past due support. The Court of Appeals affirmed the district court in an unpublished opinion and remanded with directions. We granted Willie Brown's petition for review.

Sarah and Willie Brown were married in Adams County, Mississippi, on January 29, 1977. Both were residents of Mississippi. Willie was on leave from the United States Army as an enlisted E-4, stationed in Germany. He completed his Germany tour in October 1977 and was reassigned to Fort Stewart, Georgia. The parties lived together in Hinesville, Georgia, until March 1980, when Willie was transferred back to Germany. Sarah returned to Mississippi, where she had a job.

Willie was transferred to Fort Riley, Kansas, in April 1982. He leased an apartment in Junction City and Sarah joined him in June 1982. In October 1982, Sarah got a job with the Army Air Force Exchange Service (AAFES) at Fort Riley, working full time as an hourly employee. Problems in the marriage developed by 1984. Sarah claimed that Willie was acting "funny," was smoking marijuana on a daily basis, and was having an affair with their next door neighbor, Earlene Beasley, who was a widow with two children.

Sarah testified that, in June 1984, Willie came home angry one night and told her to get out of his house. According to Sarah, she left that night and returned for only one night during the next 16 months. When she left, she took a large suitcase with clothes and personal belongings. During the next year, she stayed with their friends, the Parkers, at Fort Riley.

Willie indicated Sarah left in June 1984 of her own accord and returned several times during the next 16 months to spend two or three days with him. In March 1985, Sarah moved in with a girlfriend. In April 1985, Willie moved to a two-bedroom house in Junction City, where he lived until he left for Korea in October 1985. During this time, Willie did not give Sarah any financial help although he received more than $300 per month in Basic Allowance for Quarters (BAQ) from the Army, ostensibly for the support of his wife, Sarah. Willie contended that, during this time period, Sarah left her personal belongings and clothing at the marital residence and that he at no time excluded her from the house.

A few days before leaving for Korea, Willie told Sarah to get her things from the house. She went, accompanied by Sergeant Major Parker. She took a few boxes of clothing that Willie had packed. When she asked for the car, household goods, and furniture, Willie acted as if he had not heard her. Earlene drove the Thunderbird during Willie's one-year tour of duty in Korea. He put the furniture and household goods in storage in Junction City.

In December 1985, Sarah filed for divorce in Geary County District Court, Case No. 85-D-521. A temporary support order was entered but service was not made on Willie in Korea. The divorce was eventually dismissed in February 1986.

Some time after departing for Korea, Willie learned that Sarah had filed for divorce and that temporary support had been ordered ex parte, requiring him to pay $200 per month, although he was never served with the order. Willie insisted that, after learning of the support order, he mailed Sarah $200 a month by money order, beginning in December 1985. Sarah never received any of these payments. She did admit that Willie used money orders to send her $200 a month when he was stationed in Germany after they were first married and she was living in Mississippi. Willie insisted he continued to send $200 a month to Sarah through February 1987, but he no longer had any money order receipts. The envelopes containing the money orders were not returned to Willie.

Willie completed his assignment in Korea in November 1986 and returned to Junction City for a few days to arrange shipment of his stored furniture and household goods to Fort Stewart, Georgia. Willie did not contact Sarah while he was in Junction City. On February 28, 1987, Sarah received a bank money order in an amount equal to Willie's BAQ, $348.48. Sarah received a second money order from a Hinesville, Georgia, bank in the sum of $348 in April 1987. Both money orders were sent by certified mail.

Meanwhile, on July 27, 1987, Willie filed for divorce in Liberty County, Georgia, Case No. 87-V-16492. Sarah was served in Geary County, Kansas, on July 31, 1987, but did not file an answer or participate in the Georgia proceedings. She filed this action on August 27, 1987. Willie was personally served on September 16, 1987, in Liberty County, Georgia. A general answer and denial was filed by the attorney appointed on Willie's behalf.

Trial on the Kansas action was postponed when Willie's present attorney entered his appearance, filed a motion for continuance, and, later, a motion to quash the service of process and to dismiss the Kansas action for lack of jurisdiction over Willie and the subject matter. A motion for summary judgment was filed on Willie's behalf on March 22, 1988. On May 25, 1988, the court overruled Willie's motions to quash and dismiss, and for summary judgment. The court found that Willie lived in the marital relationship with Sarah within the State of Kansas, and Sarah continues to reside within the state; that the court has jurisdiction

over the parties and subject matter; that service was sufficient and appropriate under K.S.A. 60-308; and that the extension of personal jurisdiction over Willie is not contrary to the Fourteenth Amendment to the United States Constitution and does not deprive Willie of due process of law.

A telephone discovery deposition was taken of Willie on May 11, 1988. In his deposition, Willie testified that he maintains Mississippi as his domicile and home of record for military purposes, has never paid state income tax to the State of Kansas, has never registered to vote in Kansas, and has never been issued a Kansas driver's license or registered a car in Kansas. The case was tried to the court on April 17, 1989.

In its findings of fact, the district court found that Sarah and Willie had lived in the marital relationship in Kansas from March 1982 until June 1984. The court found that Sarah and Willie were residing separately and apart from July 1984 through October 1987. The court further found that Sarah and Willie were divorced on October 30, 1987, which is presumably in reference to the Georgia default divorce which was granted on November 12, 1987. Then the court found as follows:

"10. From July 1984 through October 1987 the respondent received a total of $14,005.00 United States Army BAQ Dependent Support allowance.

"11. From July 1984 through October 1987 the respondent paid to the petitioner for her support the sum of $2,028.48.

"12. The respondent received the sum of $11,976.52 for the support of the petitioner and from which the petitioner received no benefit."

In its conclusions of law, the court held that it had jurisdiction of the parties and the subject matter. It also held that the provisions of United States Army Regulation 608-99-1-8 require the minimum support of a dependent to be equal to the soldier's BAQ. Finally, the court concluded as follows:

"3. As a minimum level of support the petitioner herein is entitled to those amounts received by the respondent as BAQ for her support.

"The court finds that to prevent the unjust enrichment of the respondent and to provide the past due support to which the petitioner is entitled the petitioner is hereby granted judgment for past due support in the amount of $11,976.52."

Following the judgment, Willie filed a notice of appeal on May 1, 1989, and a motion for stay pending appeal and determination

of a supersedeas bond. Sarah then filed a wage garnishment to enforce the judgment against Willie's employer, the United States of America. Willie opposed the garnishment, arguing that if it was not alimony, garnishment of federal wages was not permissible. In its order of May 23, 1989, the trial court held that the judgment of $11,976.52 for support met all federal and state requirements of a judgment enforceable as alimony by wage garnishment. The court allowed garnishment and refused to limit the garnishment to 25%, thus indicating the court considered it to be support; the court denied Willie's motion to stay pending appeal and set a supersedeas bond in the sum of $15,000.

The Court of Appeals affirmed the trial court's finding that it had in personam jurisdiction to order maintenance. In reaching this conclusion, the Court of Appeals stated that the term "marital domicile" is "nothing more than shorthand for the requirements of 60-308(b)(8) itself." Willie contests this statement, noting that in *Varney v. Varney*, 222 Kan. 700, 702, 567 P.2d 876 (1977), this court stated that establishing marital domicile within this state is sufficient minimum contact to confer in personam jurisdiction "when the *additional* requirements of K.S.A. 60-308(b)(8) are met." (Emphasis added.) The Court of Appeals concluded that the contacts Willie had with the State of Kansas during the three years he lived here were sufficient to satisfy the minimum contacts requirement.

The Court of Appeals concluded that the trial court did not err in taking judicial notice of AR 608-99-1-8, which sets out the Army's policy on child custody, paternity, and financial support regarding soldiers and their family members.

Finally, the Court of Appeals concluded that the trial court did not order past maintenance, noting that the order did not purport to do anything retroactively but, instead, simply created a judgment effective on the date of the journal entry. Yet, the Court of Appeals concluded that the trial court was unclear about whether the award was intended to be for future maintenance subject to periodic payments, which would make it garnishable under 42 U.S.C. § 662 (1982). The case was remanded to enable the trial court to "clarify whether it intended the judgment as future maintenance payable in periodic payments."

We first note that Willie did not raise as an issue in his petition for review the Court of Appeals' affirmance of the district court's taking judicial notice of AR 608-99-1-8. He did, however, argue the issue in his supplemental brief filed with this court. The Court of Appeals noted that the regulation is published in the Federal Register at 50 Fed. Reg. 52,447 (1985) and in the Code of Federal Regulations at 32 C.F.R. § 584.7 (1989). In *Fasse v. Lower Heating & Air Conditioning, Inc.*, 241 Kan. 387, 736 P.2d 930 (1987), this court held that a trial court could take judicial notice of regulations an agency was required to publish in the Federal Register pursuant to K.S.A. 60-409(b). The Court of Appeals correctly concluded that judicial notice was proper and changes made to the regulation in 1985 were not substantive. The court also properly concluded that the trial court could consider the Army regulation in making its decision about awarding maintenance. (Citing *Williams v. Williams*, 219 Kan. 303, 306, 548 P.2d 794 [1976].)

We next address Willie's argument that he did not have sufficient contacts with the State of Kansas to enable the district court here to exercise in personam jurisdiction over him. In support of this argument, Willie notes that he had left Kansas for Korea two years prior to the filing of the divorce. He also notes that, while he lived in Kansas, he did not pay state income tax, did not register to vote, did not obtain a driver's license, and did not register a car. Throughout his military career, he has maintained Mississippi as his domicile and home of record. Because he never acquired a Kansas domicile, Willie argues that the parties could not have had a marital domicile in Kansas.

Willie contests the Court of Appeals' ruling that "the term 'marital domicile' is nothing more than shorthand for the requirements of [K.S.A.] 60-308(b)(8) itself." K.S.A. 1989 Supp. 60-308(b)(8) provides:

"*Submitting to jurisdiction—process.* Any person, whether or not a citizen or resident of this state, who in person or through an agent or instrumentality does any of the acts hereinafter enumerated, thereby submits the person and, if an individual, the individual's personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of these acts:

"(8) living in the marital relationship within the state notwithstanding subsequent departure from the state, as to all obligations arising for maintenance, child support or property settlement under article 16 of this chapter, if the other party to the marital relationship continues to reside in the state."

Previous cases by this court and the Court of Appeals indicate that "marital domicile" is not necessarily synonymous with the requirements of K.S.A. 1989 Supp. 60-308(b)(8). In *Perry v. Perry*, 5 Kan. App. 2d 636, 623 P.2d 513 (1981), the plaintiff husband was granted a default divorce and obtained provisions for child custody, child support, property division, and alimony. The wife subsequently sought to set aside the judgment, arguing the court had no in personam jurisdiction because (1) plaintiff was not a resident of Kansas when he filed the petition and (2) she was not and had never been a resident of Kansas. Plaintiff husband was a resident of Kansas when he joined the Navy in 1955 and had continued in the service ever since. At the time he filed for the divorce, he was stationed in Japan. The husband always claimed Kansas as his residence when reenlisting, voted absentee in Kansas, never voted elsewhere, and continuously carried a Kansas driver's license. 5 Kan. App. 2d at 637.

The wife in *Perry* argued that the husband had not met the requirement of K.S.A. 60-1603(a) that the person filing for divorce must be "an *actual* resident of the state for 60 days immediately preceding the filing of the petition." (Emphasis added.) The court noted that, for purposes of divorce jurisdiction, "residence" is substantially the equivalent of "domicile." 5 Kan. App. 2d at 637 (citing *Irvin v. Irvin*, 182 Kan. 563, Syl. ¶ 1, 322 P.2d 794 [1958]). The court concluded that the word "actual" meant "bona fide," in other words, having an intent to reside here. 5 Kan. App. 2d at 637-38. Therefore, a temporary absence did not affect one's status as an actual resident. Furthermore, one does not lose a residence by mere physical presence elsewhere unless the person intends to abandon the old residence and adopt the new one. 5 Kan. App. 2d at 638 (citing *Irvin*, 182 Kan. 563, Syl. ¶ 2). Thus, government employees, including servicemen, may retain their residence at the time they enter the service no matter how long they are physically away as long as they do not intend to

change that residence. 5 Kan. App. 2d at 638 (citing *Carpenter v. Carpenter*, 30 Kan. 712, 2 Pac. 122 [1883]).

In *Perry*, the court concluded that the defendant wife did not meet her burden of showing that the plaintiff husband abandoned his Kansas residence. Because the evidence indicated that he had not, the Court of Appeals accepted the trial court's ruling on the issue. The court proceeded to accept the wife's second argument that she was a resident of Virginia and had never resided in Kansas or had other contacts with the state sufficient to establish minimum contacts justifying in personam jurisdiction. The court concluded that no evidence indicated the wife had ever "lived in the marital relationship" in Kansas. Her only trip to Kansas with her husband was a brief sojourn while the family was en route from the husband's former station in Hawaii to his new post in Virginia. The court stated, "The term 'lived in the marital relationship' is the equivalent of 'established a marital domicile.' " 5 Kan. App. 2d at 639 (quoting *Varney v. Varney*, 222 Kan. at 702). "No marital domicile was shown to have existed in Kansas, so 60-308(*b*)(8) was not applicable." *Perry*, 5 Kan. App. 2d at 639.

Willie argues that, before the court can exercise in personam jurisdiction over him in a domestic relations proceeding, it must find that the marital domicile was in Kansas in order to apply 60-308(b)(8). Because he never intended to change his domicile from Mississippi to Kansas, he argues that the court cannot find that the marital domicile existed in Kansas and, therefore, has no power to order maintenance in this case.

In *Varney v. Varney*, 222 Kan. at 702, this court held that "[e]stablishing a marital domicile within the state is sufficient minimum contact to confer *in personam* jurisdiction *when the additional requirements* of K.S.A. 60-308(*b*)(8) are met." (Emphasis added.) Willie notes that the Kansas courts have apparently never defined "marital domicile." Although the term is seldom defined by the courts, Willie urges this court to consider the definition in *Matter of Smidt*, 162 Misc. 596, 295 N.Y.S. 227 (1937). In *Smidt*, the court states: "In the ordinary marriage, where the parties are living together, [the] *rem* is deemed to exist within the jurisdiction of the marital domicile, which is the place of their abode with the intention of continuance." 162 Misc.

at 599. Although this is the generally defined rule, the court in *Smidt* continues by noting a well defined exception when the parties are separated or the husband's conduct destroys the marital res and requires the wife to live elsewhere. The court noted:

"In such situations, the wife, by force of necessity, must establish a separate domicile and her act in so doing accomplishes for practical purposes a removal of the marital *res* sufficient to authorize the court possessing jurisdiction at the domicile so established by her to exercise authority over it. [Citations omitted.]" 162 Misc. at 599.

Willie argues that his domicile remained in Mississippi. See 25 Am. Jur. 2d, Domicil § 39, p. 29. He further argues that Sarah's domicile also remained in Mississippi until she and Willie separated. Because neither one accepted Kansas as a domicile while they were living together, Willie argues that Kansas cannot become a marital domicile because the parties, when living in the marital relationship, did not intend to abandon Mississippi as the marital domicile. After their separation, Willie maintained his Mississippi domicile. Although Sarah apparently adopted Kansas as her domicile, Willie argues that the marital domicile continues in Mississippi. Because marital domicile was never established in Kansas, Willie argues that the prerequisite for exercising long arm jurisdiction under K.S.A. 1989 Supp. 60-308(b)(8) was never present and, therefore, that statute has no application in this case. Willie, however, admits that, if Sarah had filed for divorce while he was still present in Kansas, he would be subject to the jurisdiction of K.S.A. 1989 Supp. 60-308(b)(8). Because he had been absent from the jurisdiction for several years prior to Sarah's filing for divorce, Willie argues that 60-308(b)(8) cannot confer long arm jurisdiction because he was never domiciled in Kansas and, therefore, no Kansas marital domicile ever existed. We do not agree.

For the district court to exercise in personam jurisdiction, the due process clause of the Fourteenth Amendment requires that Willie have sufficient "minimum contacts" with Kansas. In this way, the due process clause of the Fourteenth Amendment limits the jurisdiction of state courts to enter judgments affecting rights or interests of nonresident defendants. A valid judgment imposing a personal obligation or duty in favor of the plaintiff may be entered only by a court having jurisdiction over the person of

the defendant. *Pennoyer v. Neff*, 95 U.S. 714, 732-33, 24 L. Ed. 565 (1877). For personal jurisdiction to exist, a sufficient connection must be established between the defendant and the forum state, making it fair to require defense of the action in that forum. The constitutional standard to determine whether a state may enter a binding judgment against a defendant was set forth by the United States Supreme Court in *Internat. Shoe Co. v. Washington*, 326 U.S. 310, 316, 90 L. Ed. 95, 66 S. Ct. 154 (1945), as follows: The defendant must "have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " (Quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 85 L. Ed. 278, 61 S. Ct. 339 [1940].) In making this decision, a court must consider whether the "quality and nature" of the defendant's activity is such that it is "reasonable" and "fair" to require him to conduct his defense in that state. *Internat. Shoe Co.*, 326 U.S. at 317, 319.

The Court of Appeals here compared the Browns' marriage with the facts in *Perry*. It noted that *Perry* did not require domicile of the respondent as a necessary condition for minimum contacts. In *Perry*, the respondent's only contact with Kansas was driving through en route to Virginia, which did not present facts that could arguably constitute contact sufficient for due process. In contrast, the Browns lived in Kansas for three years. Two of those years, they lived together as husband and wife. The court noted that, in *Varney*, this court recognized that K.S.A. 1989 Supp. 60-308 requires only that the parties live in a marital relationship within the state and that the party petitioning for divorce continue to reside in Kansas. 222 Kan. at 701. This observation led the Court of Appeals to its statement that " 'marital domicile' is nothing more than shorthand for the requirements of 60-308(b)(8)."

Does K.S.A. 1989 Supp. 60-308(b)(8) require something other than establishment of marital domicile to have in personam jurisdiction over an absent defendant in a domestic relations matter? The Court of Appeals concluded that it was unnecessary to determine whether Willie was actually domiciled in Kansas, because the scope of 60-308(b)(8) is determined by constitutional limitations. (Citing *Varney v. Varney*, 222 Kan. at 702.) For the Court

of Appeals, the question was not whether Willie and Sarah chose Kansas as their marital domicile but, instead, whether Willie's living in a marital relationship in Kansas was sufficient to meet the constitutional minimum contacts requirements. The Court of Appeals pointed out that, in *Varney*, this court stated: "Each case must be judged on its own merits to determine whether the nonresident defendant has sufficient minimum contact with this state so as to comply with due process when our courts assert *in personam* jurisdiction." 222 Kan. at 702.

We agree with this analysis by the Court of Appeals. The scope of in personam jurisdiction for issues arising out of the marital relationship for those obligations covered by 60-308(b)(8) is to be determined by constitutional limitations and does not contain an additional requirement to establish a marital domicile. As the Court of Appeals indicated, the question in determining whether in personam jurisdiction is appropriate in these cases should be whether the absent defendant lived in a marital relationship within the state to an extent sufficient to meet the constitutional minimum contacts requirements of *Internat. Shoe Co. v. Washington*, 326 U.S. 310.

Willie argues that, even if this minimum contacts requirement is the only limitation applied in this case, he still did not purposefully avail himself of the privilege of conducting activities within Kansas and that, therefore, in personam jurisdiction should not exist. In support, he argues that he did not choose to come to Kansas but was assigned by the Army and continued to maintain his domicile in Mississippi. The Court of Appeals rejected this argument, noting that, even though Willie may not have chosen to come to Kansas, he did choose to enlist and remain in the Army. By this act, he knew he would be sent somewhere other than Mississippi. Although his lack of choice might be relevant to determine his domicile, the court concluded that it did not prevent operation of the long arm statute in determining that a marital relationship existed in Kansas under K.S.A. 1989 Supp. 60-308, which was sufficient for in personam jurisdiction to attach to obligations that arose from the marital relationship.

The Court of Appeals also rejected Willie's argument that his actual contacts with Kansas were minimal, noting that, even though Willie retained Mississippi as his home, never registered

to vote, and never obtained a driver's license or registered a car in Kansas, he still lived in this state for three years. He lived off the base, drove on Kansas roads, and shopped at local stores. Because his contacts were not merely incidental, he lived in the marital relationship in Kansas, and Sarah has not left the state, the Court of Appeals concluded that the trial court did not err in holding that it had in personam jurisdiction over Willie.

Willie recognizes that Kansas has a legitimate interest in providing a convenient forum for resolution of marital disputes arising between transients temporarily physically residing within its borders pursuant to military orders, as recognized in *Craig v. Craig,* 143 Kan. 624, 56 P.2d 464 (1936). Yet, he argues that the interest of the state and the fairness to the service member is diminished considerably when the action is not filed until long after the Army has ordered the service member to leave Kansas for another duty station. Even though Willie was ordered to a different duty station, Sarah remained, living in Kansas continuously since the marital relationship was dissolved by the separation of the parties. Her continuing residence complies with the requirements of K.S.A. 1989 Supp. 60-308(b)(8). The prior contact of both parties with the state while they lived in the marital relationship, along with her continuing residence, provides this court with the in personam jurisdiction necessary for the imposition of a support order by the district court in this case. The Court of Appeals decision is correct, and the trial court's conclusion that it had in personam jurisdiction over Willie is affirmed.

We next consider whether the trial court awarded past due support by ordering retroactive payment of the serviceman's BAQ. During their separation, Willie received BAQ from the Army to provide support for his dependent wife. From July 1984 through December 1984, Willie received BAQ of $315 per month; for the year 1985, he received $337 per month; for the year 1986, he received $348 per month; and from January 1987 through October 1987, he received $358 per month. Therefore, from July 1984 through October 1987, Willie received a total of $14,005 in BAQ. The trial court found that, during this period, Willie paid Sarah support of $2,028.48. Six money orders were issued to Sarah during 1987. Initially, she did not receive four of these and they had to be reissued by the bank. The trial court gave

Willie no credit for the $200 money orders he claimed to have sent Sarah monthly in response to the ex parte order in the first divorce action she filed.

The trial court concluded that Willie received $11,976.52 for Sarah's support from which she received no benefit. This figure is reached by subtracting the amount received by Sarah from Willie's total BAQ. The trial court made a conclusion of law that AR 608-99-1-8 required Willie to provide minimum support to Sarah equal to a soldier's BAQ. The court also made a conclusion of law that "[a]s a minimum level of support the petitioner herein is entitled to those amounts received by the respondent as BAQ for her support." The court further found "that to prevent the unjust enrichment of the respondent and to provide the past due support to which the petitioner is entitled the petitioner is hereby granted judgment for past due support in the amount of $11,976.52."

Willie argues that the trial court left no doubt that it intended to award past support in the amount of the BAQ. The statutory authority for awarding support in Kansas provides for future support only and does not allow an award for past support. K.S.A. 1989 Supp. 60-1610(b)(2) provides in pertinent part:

"The decree may award to either party an allowance for future support denominated as maintenance, in an amount the court finds to be fair, just and equitable under all of the circumstances. The decree may make the future payments modifiable or terminable under circumstances prescribed in the decree. In any event, the court may not award maintenance for a period of time in excess of 121 months. . . . Maintenance may be in a lump sum, in periodic payments, on a percentage of earnings or on any other basis. At any time, on a hearing with reasonable notice to the party affected, the court may modify the amounts or other conditions for the payment of any portion of the maintenance originally awarded that has not already become due, but no modification shall be made without the consent of the party liable for the maintenance, if it has the effect of increasing or accelerating the liability for the unpaid maintenance beyond what was prescribed in the original decree."

The court also has the ability under K.S.A. 1989 Supp. 60-1610(b)(1) to divide the real and personal property of the parties "whether owned by either spouse prior to marriage, acquired by either spouse in the spouse's own right after marriage or acquired by the spouses' joint efforts." However, the trial court designated

the sum it awarded as "past due support" and gave no indication that the lump sum award involved a division of property. Sarah has not asked that the award be considered property, presumably because then she could not obtain the judgment through garnishment of Willie. Garnishment of members of the armed services is allowed only for alimony payments that are to be made periodically. 42 U.S.C. § 659, 662(c) (1982). Willie points out that, following the decision by the Court of Appeals, Sarah's attorney contacted the district court and asked that the court clarify that the sum of $11,976.52 was specifically intended to be future support, which could be paid in periodic payments plus interest, and requested that the payments be an amount not less than $500 per month. This would make the judgment one for lump sum maintenance intended as future support, payable as a periodic payment and subject to garnishment pursuant to 42 U.S.C. § 659.

In support of his argument, Willie cites *Marshall v. Marshall*, 208 Kan. 63, 490 P.2d 388 (1971), in which the court granted plaintiff, the wife, a sum it denominated "temporary support." The petition for divorce contained no prayer for temporary support or temporary alimony, and the plaintiff made no application for such support during the pendency of the action. The district court ordered temporary support on its own motion at the trial when it granted the divorce, divided property, and awarded permanent alimony. 208 Kan. at 65-66. This court recognized that the trial court had wide discretion in adjusting the financial obligations of the parties in the divorce action, and the exercise of that discretion was not to be disturbed on appeal in the absence of a showing of clear abuse. 208 Kan. at 66. Nevertheless, the trial court's action had to comply with the statutes authorizing divorce, division of property, and the payment of support. The trial court had the power to provide for necessary support while the action was pending, to divide the property " 'in a just and reasonable manner,' " and to award future support " 'in such amount as the court shall find to be fair, just and equitable under all of the circumstances.' " 208 Kan. at 67 (quoting 60-1610[b] and [c]). Because the record contained nothing to establish necessity, this court concluded that the judgment could not have been for temporary support. The court further reasoned that the

item designated "temporary support" could not be inferred to be part of the property settlement and was without statutory or evidentiary basis. 208 Kan. at 67.

Willie argues that, like the trial court in *Marshall*, the court here acted with unbridled discretion in awarding a judgment for past due support that is not authorized by statute. His argument has merit. First, the trial court did not have the authority under the statute to award past due support. K.S.A. 1989 Supp. 60-1610(b)(2) allows the court to award future support that is fair, just, and equitable under all of the circumstances but gives the court no authority to award past support. Even modification of an original maintenance order for unpaid maintenance cannot occur without the consent of the party liable for the maintenance. Here, the trial court acted contrary to the statute by awarding past due support. Furthermore, the Court of Appeals erred in concluding that the trial court's order did not purport to do anything retroactively. The conclusions of law by the trial court leave no doubt that its award was entered to provide past due support based upon the BAQ that Willie had already received prior to the trial court's decision.

The Court of Appeals found that the trial court could consider the Army regulation about the BAQ as one of the factors used to reach an appropriate award of maintenance. (Citing *Williams v. Williams*, 219 Kan. 303, 306, 548 P.2d 794 [1976].) Among the factors a court may consider in awarding maintenance are "the time, source and manner of acquisition of property . . . and the parties' overall financial situation." *Williams*, 219 Kan. at 306. The Court of Appeals concluded that Willie's acquisition of BAQ money related directly to both of these factors. The court recognized that exercise of the wide discretion of a district court in adjusting the financial obligations of divorcing parties should not be disturbed on appeal in the absence of a showing of clear abuse. The Court of Appeals concluded that no abuse was shown here because the source of the money was properly considered and the award was well within the court's range of discretion.

The problem with the Court of Appeals' conclusion is that the only evidence presented to the trial court to determine the amount of the award relied exclusively upon the BAQ. The trial court's award of past support is not allowed under K.S.A. 1989

Supp. 60-1610(b)(2), and, therefore, the court abused its discretion in making such an award. The court clearly intended to award retroactive support.

The Court of Appeals affirmed the judgment but remanded the case with directions for the trial court to clarify whether it intended the judgment as future maintenance payable in periodic payments. Such a declaration is necessary for a support judgment to be garnishable of a person in the military service pursuant to 42 U.S.C. § 662. Because it is clear that the court ordered past due support, the judgment must be vacated. We agree that this case should be remanded to allow the court to determine if future support should be awarded. Such an award, if granted, must be "fair, just and equitable under all of the circumstances."

On remand, the court must consider the circumstances of the parties at the time of the hearing on the divorce. The court can consider Willlie's receipt of the BAQ as it would any other property received during the parties' marriage, but cannot merely designate this amount as future support. The district court should not assume the role of enforcing the Army regulation, which lists ways for punishing a soldier for arrearages in supporting his family. If the soldier does not comply with court orders or written support agreements, under the regulation, the soldier's pay can be garnished, an involuntary allotment can be initiated against the soldier's pay accounts, contempt of court proceedings can be used, and the BAQ received by the soldier can be recouped. The trial court cannot use an order in the divorce proceeding to enforce the Army regulation.

The district court also indicated that it was granting the judgment "to prevent the unjust enrichment of the respondent." Under the theory of unjust enrichment, one becomes entitled to recover against another because an obligation to pay arises from the law of natural immutable justice and equity. Under this theory, if the case shows one has a duty to pay, the law imputes upon him a promise to fulfill that obligation. This is a quasi-contractual obligation. *Witmer v. Estate of Brosius*, 184 Kan. 273, 276-78, 336 P.2d 455 (1959); 66 Am. Jur. 2d, Restitution and Implied Contracts §§ 1, 2. "Unjust enrichment" is the term used to characterize the result of failing to make restitution for property or benefits received under circumstances that create a

legal or equitable obligation to account therefor. 66 Am. Jur. 2d, Restitution and Implied Contracts § 3. . The petition for divorce alleges that Willie owes Sarah "past due spousal support from 1984 through 1987 in excess of Thirteen Thousand Dollars ($13,000.00)." In its prayer, the petition asks that the court grant an absolute divorce, award Sarah "a reasonable sum for past due, present and future support, maintenance, and attorney fees" and "for such other and further relief as to the Court seems just and equitable under the circumstances." The Court of Appeals rejected Willie's argument that unjust enrichment should be specifically pled and was not done in this case. The court relied upon K.S.A. 1989 Supp. 60-254(c), which provides in pertinent part: "[E]very final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his or her pleadings."

Sarah did not sue Willie for maintenance based upon the theory of unjust enrichment; she sued him for divorce and asked the court to grant her maintenance. As previously indicated in this opinion, the receipt of BAQ by Willie is one of several factors the trial court should consider in determining if maintenance should be granted and, if so, in what amount. Furthermore, granting maintenance based upon unjust enrichment would be contrary to the provisions of K.S.A. 1989 Supp. 60-1610(b)(2), which allows the court to award only future support.

The judgment of the Court of Appeals affirming the district court's finding that it had in personam jurisdiction is affirmed. The judgment of the Court of Appeals affirming the district court's award of past due support is reversed. The district court is affirmed in part and reversed in part, and the case is remanded with directions to determine if an allowance for future support should be granted and, if so, in what amount.

HERD, J., concurring and dissenting: I concur with the holding that the district court of Kansas had in personam jurisdiction over Willie Brown. I respectfully disagree, however, with the holding that the maintenance order should be set aside.

We have long held that a judgment of a district court is to be affirmed on appeal if it was proper, even though awarded for the

wrong reason. Here, the district court was justified as a court of equity in making the award to Sarah Brown from a review of all the surrounding circumstances, even though the court termed the award as "past due maintenance." There was no previous maintenance order in this case. This was the first such order. There was no attempt to make the order relate back. I submit this is an award of future maintenance based on the court's equitable consideration of all the circumstances involving the parties which naturally involved past conduct—not past maintenance.

I would affirm the district court and the Court of Appeals.