[This opinion has been published in *Ohio Official Reports* at 76 Ohio St.3d 374.]

FRAIBERG *v*. CUYAHOGA COUNTY COURT OF COMMON PLEAS, DOMESTIC

RELATIONS DIV..

[Cite as *Fraiberg v. Cuyahoga Cty. Court of Common Pleas*, 1996-Ohio-384.]

*Prohibition to prevent domestic relations court from proceeding with relator's*

*wife's legal separation action—Writ denied, when.*

(No. 96-135—Submitted July 10, 1996—Decided August 21, 1996.)

IN PROHIBITION.

———————————

{¶ 1} In 1963, relator, Robert S. Fraiberg, married Judith H. Fraiberg in Ohio. They continued to live in Ohio, where both were born and raised. They subsequently had three children, also raised in Ohio. In 1964, relator started Federated Steel, which became a successful Ohio business. In 1966, the Fraibergs moved to their home in Pepper Pike, Ohio, which they still own.

{¶ 2} In September 1991, relator retired, closed his business, and moved with his wife to their home in Boca Raton, Florida, which they had previously used for vacations. In 1992, the Fraibergs registered to vote in Florida. Relator signed a "Declaration of Domicile," stating that he had been a bona-fide resident of Boca Raton since September 1991 for purposes of Florida's homestead exemption.

{¶ 3} In 1993, the Fraibergs spent a three-month holiday in Europe, and returned to Pepper Pike in early August, staying in their home through September. They then returned to Florida. After a few weeks in Florida, the Fraibergs traveled to Pepper Pike in early November 1993 to celebrate a family wedding and the Thanksgiving holiday. In December 1993, relator returned to Florida because his parents needed his assistance. Relator's wife did not accompany him and instead stayed at their Pepper Pike home.

**{¶ 4}** In January 1994, Judith Fraiberg filed an action against relator in respondent, Cuyahoga County Court of Common Pleas, Domestic Relations Division, for legal separation under R.C. 3105.17. She alleged that relator had committed acts of extreme cruelty towards her, some or all of which occurred in Cuyahoga County. Relator then filed in Florida for divorce, but that action was stayed pending completion of his wife's Ohio separation action.

**{¶ 5}** In July 1995, the trial court overruled relator's motion to dismiss the Ohio action. The court determined that it possessed subject-matter jurisdiction over the legal separation action and personal jurisdiction over relator, a nonresident defendant.

**{¶ 6}** In January 1996, relator filed this prohibition action to prevent the domestic relations court from proceeding in his wife's separation action. This court granted an alternative writ and issued a schedule for the presentation of evidence and briefs. 74 Ohio St.3d 1508, 659 N.E.2d 1285.

**{¶ 7}** The cause is now before this court for a consideration of the merits.

———————————

*Baker & Hostetler*, *David L. Marburger* and *James A. Loeb*; *Kenneth J. Fisher Co., L.P.A.*, and *Kenneth J. Fisher*, for relator.

*Stephanie Tubbs Jones*, Cuyahoga County Prosecuting Attorney, and *Carol Shockley*, Assistant Prosecuting Attorney, for respondent.

———————————

***Per Curiam.***

**{¶ 8}** Relator asserts that a writ of prohibition should issue to prevent the trial court from proceeding with his wife's legal separation action. To be entitled to a writ of prohibition, relator must establish (1) that the trial court is about to exercise judicial power, (2) that the exercise of such power is unauthorized by law, and (3) that denial of the writ will cause injury to relator for which no other adequate legal remedy exists. *State ex rel. Barclays Bank PLC v. Hamilton Cty. Court of*

*Common Pleas* (1996), 74 Ohio St.3d 536, 540, 660 N.E.2d 458, 461. Here, it is uncontroverted that the trial court will continue to exercise jurisdiction in the separation action absent a writ of prohibition.

{¶ 9} As to the remaining requirements for a writ of prohibition, absent a patent and unambiguous lack of jurisdiction, postjudgment appeal from a decision overruling a motion to dismiss based on lack of personal jurisdiction will generally provide an adequate legal remedy which precludes the issuance of the writ. *State ex rel. Ruessman v. Flanagan* (1992), 65 Ohio St.3d 464, 467-468, 605 N.E.2d 31, 35.

{¶ 10} Relator contends that he is entitled to a writ of prohibition because the trial court patently and unambiguously lacks personal jurisdiction over him. The trial court concluded that it possesses personal jurisdiction over relator based on Civ.R. 4.3(A)(6) and (8), which provide:

"(A) When service permitted. Service of process may be made outside of this state, as provided in this rule, in any action in this state, upon a person who, at the time of service of process, is a nonresident of this state or is a resident of this state who is absent from this state. 'Person' includes an individual *** who, acting directly or by an agent, has caused an event to occur out of which the claim that is the subject of the complaint arose, from the person's:

"***

"(6) Having an interest in, using, or possessing real property in this state;

"***

"(8) Living in the marital relationship within this state notwithstanding subsequent departure from this state, as to all obligations arising for spousal support, custody, child support, or property settlement, if the other party to the marital relationship continues to reside in this state[.]"

{¶ 11} Relator initially asserts that the trial court patently and unambiguously lacks personal jurisdiction over him because Ohio's "long-arm"

statute, R.C. 2307.382, does not authorize the exercise of extraterritorial jurisdiction based on Civ.R. 4.3(A)(8). The long-arm jurisdictional provisions of R.C. 2307.382(A) and Civ.R. 4.3(A) "'are consistent and in fact complement each other.'" *U.S. Sprint Communications Co., Ltd. Partnership v. Mr. K's Foods, Inc.* (1994), 68 Ohio St.3d 181, 184, 624 N.E.2d 1048, 1051, fn. 2, quoting *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.* (1990), 53 Ohio St.3d 73, 75, 559 N.E.2d 477, 479. In *U.S. Sprint* and *Kentucky Oaks*, the pertinent long-arm provisions were contained in both the statute and rule. Conversely, this case involves Civ.R. 4.3(A)(8), the only long-arm provision which has no counterpart in R.C. 2307.382(A). See 1 Klein, Browne & Murtaugh, Baldwin's Ohio Civil Practice (Supp.1996) 17, Section T 3.02(C). Based on *U.S. Sprint* and *Kentucky Oaks*, Civ.R. 4.3(A)(8) complements and, in fact, supplements the statute.

{¶ 12} In addition, to the extent that R.C. 2307.382(A) and Civ.R. 4.3(A) conflict, Civ.R. 4.3(A) controls. See Section 5(B), Article IV, Ohio Constitution ("The supreme court shall prescribe rules governing practice and procedure in all courts of the state, which rules shall not abridge, enlarge, or modify any substantive right. *** All laws in conflict with such rules shall be of no further force or effect after such rules have taken effect."); *Kilbreath v. Rudy* (1968), 16 Ohio St.2d 70, 72, 45 O.O.2d 370, 371, 242 N.E.2d 658, 660 (R.C. 2307.382 clearly procedural rather than substantive); *Hiatt v. S. Health Facilities, Inc.* (1994), 68 Ohio St.3d 236, 626 N.E.2d 71 (Ohio Rules of Civil Procedure, promulgated pursuant to Section 5(B), Article IV of the Ohio Constitution, control over conflicting statutes purporting to govern procedural matters); but, see, *Kentucky Oaks,* 53 Ohio St.3d at 75, 559 N.E.2d at 479. A majority of treatises addressing this issue agree. See 4 Harper & Solimine, Anderson's Ohio Civil Practice (Supp.1995) 41, Section 150.29 ("When Civil Rule 4.3[A] became effective on July 1, 1970, it arguably superseded the then-existing long arm statutes pursuant to the Ohio Constitution."); 1 Fink, Wilson & Greenbaum, Ohio Rules of Civil Procedure (1992) 71, Section

4.3-1 ("Rule 4.3[A] states the terms upon which service to out-of-state parties is permitted and is substantially equivalent to Ohio's former long-arm statute, O.R.C. [] 2307.382, which was superseded by the promulgation of Rule 4.3[A]."); Klein, Browne & Murtaugh, *supra* (1988), at 29, Section T 3.02(C) ("[I]t is fair to conclude *** that R.C. 2307.381 and 2307.382 have been superseded by the Civil Rules and the only viable Ohio long-arm provision is that provided in Civil Rule 4.3[A].").

{¶ 13} Further, the trial court did not rely solely on Civ.R. 4.3(A)(8) to exercise personal jurisdiction over relator. It also relied on Civ.R. 4.3(A)(6), which is the same as R.C. 2307.382(A)(8) ("[h]aving an interest in, using, or possessing real property in this state"). Based on the foregoing, relator's contention that the trial court lacks personal jurisdiction because R.C. 2307.382 did not authorize service of process on relator is meritless.

{¶ 14} Relator next contends that Civ.R. 4.3(A)(6) and (8) are inapplicable. As noted previously, Civ.R. 4.3(A)(8) permits service on a nonresident defendant who has "caused an event to occur out of which the claim that is the subject of the complaint arose, from the person's *** [l]iving in the marital relationship within the state notwithstanding subsequent departure from this state, as to all obligations arising for spousal support, custody, child support, or property settlement, if the other party to the marital relationship continues to reside in this state[.]" The trial court found that although the Fraibergs were domiciled in Florida beginning in September 1991, they lived in the marital relationship in Ohio when they returned in November 1993 and Mrs. Fraiberg continued to reside in Ohio after relator returned to Florida. Relator claims that the trial court misconstrued Civ.R. 4.3(A)(8) because the terms "living in the marital relationship" and "continues to reside" refer to the marital domicile. Relator argues that the rule only applies where both spouses are Ohio domiciliaries at the time the nonresident defendant leaves

Ohio, and since relator was a Florida domiciliary at the time he left Ohio in November 1993, Civ.R. 4.3(A)(8) is inapplicable.

{¶ 15} The Staff Notes to Civ.R. 4.3(A)(8) indicate that it is a "word for word adoption" of a proposed Indiana rule of civil procedure which is in turn based on a Kansas statute. See, also, Harper (1987), *supra,* at 230-231, Section 150.40. Contrary to relator's interpretation of Civ.R. 4.3(A)(8), the Kansas Supreme Court held that its analogous statutory provision "does not contain an additional requirement to establish a marital domicile." *In re Marriage of Brown* (1990), 247 Kan. 152, 162, 795 P.2d 375, 382. Instead, the dispositive issue in determining the propriety of personal jurisdiction based on this long-arm provision is whether the nonresident defendant lived in a marital relationship within the state to an extent sufficient to satisfy the minimum-contacts requirement of constitutional due process. *Id.*

{¶ 16} The evidence before the trial court established that the parties were born and raised in Ohio, married in Ohio, and raised their children in Ohio. Relator's business was located in Ohio. Relator's doctor, lawyer, accountants, and other professional personnel are in Ohio. The vast majority of the Fraibergs' marital assets, including the home in which Mrs. Fraiberg resides, are in Ohio. According to Mrs. Fraiberg, nearly all of her witnesses in the separation action are from Ohio, and the acts of extreme cruelty giving rise to her action occurred in Ohio. From August 1993 through November 1993, the Fraibergs spent more time in Ohio than in Florida.

{¶ 17} Based on the evidence, personal jurisdiction under Civ.R. 4.3(A)(8) is not patently and unambiguously lacking in this case. In fact, the trial court properly concluded from the foregoing evidence that the Fraibergs were living in the marital relationship in Ohio in November 1993 and that Civ.R. 4.3(A)(8) permitted *in personam* jurisdiction over relator despite his departure to Florida in December 1993. The unreported cases cited by relator which determined Civ.R.

6

4.3(A)(8) to be inapplicable are inapposite. See *Stanek v. Stanek* (Sept. 26, 1994), Butler App. No. CA94-03-080, unreported, 1994 WL 519826 (parties lived in Ohio shortly after 1972 marriage, but moved to a different state in 1973; husband did not move back to Ohio until a few years prior to instituting divorce action, and no evidence of sufficient minimum contacts of husband with Ohio); *Murden v. Murden* (Aug. 18, 1989), Clark App. No. 2553, unreported, 1989 WL 94533 (parties married in Virginia and lived there until wife moved to Ohio, and husband only occasionally visited Ohio and owned no real property in Ohio).

{¶ 18} We have rarely issued or affirmed the issuance of a writ of prohibition based on an alleged lack of personal jurisdiction. See, *e.g., State ex rel. Connor v. McGough* (1989), 46 Ohio St.3d 188, 546 N.E.2d 407; *State ex rel. Stone v. Court* (1984), 14 Ohio St.3d 32, 14 OBR 333, 470 N.E.2d 407. In *Connor*, we granted a writ prohibiting an Ohio judge from exercising personal jurisdiction over a German resident in an Ohio wrongful death action because the nonresident defendant had no known contacts with Ohio. In *Stone*, we affirmed the issuance of a writ prohibiting an Ohio court's exercise of personal jurisdiction over a Texas resident in a paternity action, where the birth and conception of the child occurred in Alabama. In both *Connor* and *Stone*, the lack of personal jurisdiction was premised on a complete failure to comply with constitutional due process. Conversely, in this case, relator does not assert that he lacks sufficient minimum contacts with Ohio necessary to satisfy constitutional due process.

{¶ 19} Therefore, relator has not met his burden of establishing that the trial court patently and unambiguously lacks personal jurisdiction over him. He has an adequate remedy by way of appeal to challenge the application of Civ.R. 4.3(A)(8). Moreover, it appears that Civ.R. 4.3(A)(8) vested the domestic relations court with the requisite jurisdiction over relator so that its exercise of jurisdiction in the legal separation action is authorized. Consequently, relator's remaining arguments as to

the inapplicability of Civ.R. 4.3(A)(6) and the inadequacy of an appellate remedy are moot.

{¶ 20} In addition, as to the issue of the adequacy of postjudgment appeal, relator complains that numerous interlocutory orders issued by the domestic relations court have caused damage to his estate, necessitated borrowing to pay expenses, and forced the removal of over $1,000,000 from some of his investment accounts. The fact that postjudgment appeal may be time-consuming and expensive to pursue does not render appeal inadequate so as to justify extraordinary relief. *State ex rel. Gillivan v. Bd. of Tax Appeals* (1994), 70 Ohio St.3d 196, 200, 638 N.E.2d 74, 77. The interlocutory orders represented an attempt by the trial court to temporarily apportion marital assets in order to pay marital expenses during the pendency of the separation action.

{¶ 21} Although the amount of money involved may be substantial, the parties appear to possess a large wealth of marital assets, which includes twelve vehicles and numerous investment accounts. The interlocutory orders and their effect on relator's finances do not supply the "dramatic fact pattern" necessary for us to conclude that postjudgment appeal is not a complete, beneficial, and speedy remedy. See *State ex rel. Casey Outdoor Advertising, Inc. v. Ohio Dept. of Transp.* (1991), 61 Ohio St.3d 429, 432, 575 N.E.2d 181, 183-184, discussing *State ex rel. Emmich v. Indus. Comm.* (1947), 148 Ohio St. 658, 36 O.O. 265, 76 N.E.2d 710.

{¶ 22} Prohibition may not be employed as a substitute for appeal from the domestic relations court's interlocutory orders. See *State ex rel. Newton v. Court of Claims* (1995), 73 Ohio St.3d 553, 555, 653 N.E.2d 366, 369. Thus, relator has also failed to establish that he lacks an adequate legal remedy to rectify any alleged errors by the domestic relations court.

{¶ 23} Accordingly, relator has not satisfied the conditions necessary to establish entitlement to extraordinary relief in prohibition, and the writ is denied.

*Writ denied.*

MOYER, C.J., RESNICK, PFEIFER, COOK and STRATTON, JJ., concur.

DOUGLAS and PFEIFER, JJ., dissent and would grant the writ because relator lacks sufficient minimum contacts with Ohio necessary to satisfy constitutional due process.

————————————