RONALD J. MANNOR vs. MICHELLE J. MANNOR
& another.[1]

No. 97-P-0267.

Worcester. September 22, 1998. - December 22, 1998.

Present: KASS, FLANNERY, & RAPOZA, JJ.[2]

*Uniform Interstate Family Support Act. Jurisdiction,* Probate Court, Divorce
proceedings, Long-arm statute. *Divorce and Separation,* Jurisdiction,
Foreign divorce, Child support. *Probate Court,* Divorce, Jurisdiction.

An Ohio judgment of divorce entered on December 6, 1994, was valid and
rendered a separate divorce judgment entered in Massachusetts on Febru-
ary 28, 1995, a nullity [49-51]; the child and spousal support orders
contained in the Ohio judgment were enforceable under the Uniform
Interstate Family Support Act [51-52] without regard to any authority of
the Probate and Family Court to enter temporary orders under § 2(a)(3) of
the Act [52-53].

COMPLAINT for divorce filed in the Worcester Division of the
Probate and Family Court Department on June 15, 1994.

The case was heard by *Susan D. Ricci,* J., and motions to
restore judgment, to reconsider, and for clarification were
considered by her.

*Steven E. Zlochiver* for Michelle J. Mannor.

*Amy Spector,* Assistant Attorney General, for Department of
Revenue.

*John W. Spillane* for Ronald J. Mannor.

KASS, J. When Ronald J. Mannor filed a complaint for divorce
with the Worcester Probate and Family Court on June 15, 1994,
his wife, Michelle J. Mannor, had five days earlier, on June 10,
commenced a divorce proceeding in the Ohio Court of Com-
mon Pleas for Lucas County. We decide that under common
law principles and under the Uniform Interstate Family Support

---

[1]Department of Revenue, Child Support Enforcement Division.

[2]Justice Flannery participated in the deliberation on this case prior to his
death.

Act (UIFSA)[3] the judgment for divorce entered in the Ohio proceeding, including orders for child support, overpowers a judgment entered in the Massachusetts proceeding; i.e., under UIFSA the Ohio judgment is entitled to full faith and credit in Massachusetts and the Massachusetts judgment is to be vacated.[4]

1. *Facts.* (a) *History of the marriage.* The couple were married in Toledo, Ohio, on March 20, 1987. Two children were born in Ohio, Tia three years earlier on March 9, 1984, and Ronald on June 4, 1988. For some time thereafter (the record is not specific as to how long), the family lived in Ohio, then moved to Chicago, and later to Michigan, where Ronald and Michelle separated in November or December, 1990. Michelle returned to Ohio with the children in 1991; Ronald continued to reside in Michigan until he took up residence in Massachusetts late in 1991 or early in 1992.

(b) *The Ohio proceedings.* Before Michelle initiated her divorce action (as previously noted, on June 10, 1994), she had, in October, 1991, obtained a child support order from the Lucas County Court of Common Pleas of $336 per month. Ronald received service of the divorce action during the third week in July, 1994, by ordinary mail addressed to him in Massachusetts.[5] He does not deny having received mail service of the Ohio action. Ronald did not appear before the Ohio court, which entered a final judgment of divorce on December 6, 1994, that among other things, granted custody of the couple's children to Michelle,[6] and ordered Ronald to pay monthly child and spousal support of $1,190.10.[7]

---

[3]The Uniform Interstate Family Support Act appears at G. L. c. 209D.

[4]Although the fundamental issue in the case is which State's support order shall govern, in detail there is a difference between the appeal of the former wife, Michelle, and that of the Massachusetts Department of Revenue (DOR). Michelle appeals from the Massachusetts judgment of divorce on the ground that it is void for the reason that Massachusetts was bound to give full faith and credit to an Ohio judgment that she says is prior in time, valid, and binding on her former husband, Ronald. DOR appeals from the refusal of the Massachusetts court to recognize, register, and enforce the Ohio child support order.

[5]There had been an effort to serve Ronald by certified mail, but that mailing went unclaimed.

[6]Michelle had a third child by another man, Keith Elliott, in 1993, and the father of that child was named as a third-party defendant in the Ohio divorce proceedings. The judgment imposed support obligations for that child on Elliott.

[7]Although physically among the original Probate Court papers in the case,

(c) *The Massachusetts proceedings.* On the initiative, in May, 1994, of the child support enforcement division of the Massachusetts Department of Revenue (DOR), a District Court judge issued an order on June 15, 1994, under G. L. c. 273A, the Uniform Reciprocal Enforcement of Support Act (URESA),[8] to pay current and past due child support in accordance with the 1991 Ohio order.

That was also the day when Ronald launched his divorce action in Massachusetts. At the time, the Mannor children were visiting for the summer with him. Their well being assumed a central role in the Massachusetts proceedings. Ronald had filed an affidavit with the Probate Court stating that the children would be at serious risk if returned to their mother's custody at the end of their visit. There was a hearing on child welfare issues on September 9, 1994, the Probate Court judge having taken emergency jurisdiction under § 2(a)(3) of G. L. c. 209B, the Uniform Child Custody Jurisdiction Act. At the September 9, 1994, hearing, Michelle behaved contumaciously, stormed out of the courtroom, and, so far as appears, out of the Commonwealth. She did not appear when the hearing reconvened on

the Ohio divorce judgment appears not to have been formally filed with the Probate Court or introduced in evidence. Michelle moved unsuccessfully to correct the record to include the Ohio judgment. The Probate Court judge denied the motion, relying on *S. Kemble Fischer Realty Trust* v. *Board of Appeals of Concord*, 9 Mass. App. Ct. 477, 479 (1980). That opinion held that if a document (in that case a response to a request for admissions) is to be considered by an appellate court, it must have been brought to the attention of the trial judge. Here, the Ohio judgment manifestly was brought to the attention of the trial judge as she refers to it in her findings four times, the last time describing the contents of the Ohio judgment in detail. Contrast *Chiu-Kun Woo* v. *Moy*, 17 Mass. App. Ct. 949 (1983). The point of the *S. Kemble Fischer* decision is that an appellate court does not review on the basis of material not before the trial judge. In this case, the trial judge cannot pretend ignorance of the Ohio divorce judgment about which she made findings. It was error not to allow the motion to correct the record. After both appeals were docketed and the two cases consolidated, DOR, claiming that it had in fact filed the Ohio divorce judgment in the trial court, sought to expand the record to include the Ohio divorce judgment and various other judicial orders and pleadings. A single justice of this court accepted the materials for filing and referred the matter to the full panel that considered the appeal. We now grant DOR's motion to expand the record, and consider the submitted material to be a part of the record. See Mass.R.A.P. 18(a), 378 Mass. 940 (1979).

[8]The Uniform Reciprocal Enforcement of Support Act was repealed by St. 1995, c. 5, § 105, and G. L. c. 209D, the Uniform Interstate Family Support Act, was adopted in its place. See St. 1995, c. 5, § 87. UIFSA became effective on February 10, 1995. See St. 1995, c. 5, § 143.

September 12. The judge found the children, indeed, to be at risk and issued a temporary custody order placing the children with their father, pending a psychological evaluation that the judge had ordered.

Conformably with G. L. c. 209B, § 7, the Probate Court judge communicated with her opposite number in Ohio, the judge in the Court of Common Pleas of Lucas County, who was presiding over the Mannor divorce case. The Probate Court judge appeared to think this would put the brakes on the Ohio proceeding. In that expectation she was disappointed and not a little displeased. The Ohio case came to a final judgment of divorce, as noted above, on December 6, 1994. Meanwhile, in November, 1994, on the basis of what the judge had learned about the children from the evaluating psychologist — that they displayed depression, suicidal ideation, and a high level of distress — the Probate Court judge in Massachusetts retained temporary jurisdiction over custody of the children. On February 28, 1995, the Massachusetts court entered a judgment of divorce. That judgment adopted the URESA order of $377.67 per month that had been entered in the District Court and this appeal is from that judgment.[9]

2. *Dominance of valid prior divorce judgment in another State.* If the parties were validly divorced in Ohio on December 6, 1994, it is elementary that under Article 4, § 1, of the United States Constitution, Massachusetts courts are bound to give the Ohio divorce judgment full faith and credit. *Williams* v. *North Carolina*, 325 U.S. 226, 229 (1945). *Cavanagh* v. *Cavanagh*, 396 Mass. 836, 839 (1986). *Simmons* v. *Simmons*, 38 Mass. App. Ct. 50, 51 (1995). The question for a Massachusetts court, therefore, is whether the Ohio judgment is valid — a question whose resolution depends on whether the Ohio court had jurisdiction over the parties.

As to the divorce component of the Ohio judgment, separate from matters of support, we do not understand Ronald Mannor

---

[9]The judgment had a peculiar now you see it, now you don't history. On Michelle's motion, the Probate Court judge vacated the judgment under Mass. R.Dom.Rel.P. 60(b)(4), or perhaps 60(b)(6). That action occurred June 8, 1995. On December 12, 1995, the order vacating the divorce judgment was restated, nunc pro tunc, to correct a procedural irregularity. A motion to reconsider the order vacating the judgment was first denied, but later allowed on October 1, 1996, and the judge entered an order that had the effect of reinstating the divorce judgment. It is not necessary for us to consider the legal propriety of reinstatement of the previously vacated divorce judgment.

to be contesting the jurisdiction of the Ohio court any longer. He had contested it before the Probate Court. For purposes of jurisdiction over the marriage, it was necessary — and sufficient — that the plaintiff in the Ohio divorce action had been a resident of that State at least six months before bringing the action. Ohio Rev. Code Ann. § 3105.03 (Baldwin 1994). See *Williams* v. *North Carolina*, 325 U.S. at 229-230 (domicile of one spouse within a State gives power to that State to dissolve a marriage). See also *Hager* v. *Hager*, 79 Ohio App. 3d 239, 243 (1992). Michelle had been resident in Ohio with the children of the marriage for three years prior to her filing her complaint for divorce there.

For those components of a judgment that make orders for support and division of property directed to the absent spouse, the court requires personal jurisdiction over that absent spouse. *Windsor* v. *Windsor*, 45 Mass. App. Ct. 650, 652 (1998). See *Hostetler* v. *Kennedy*, 69 Ohio App. 3d 299, 302 (1990). As to the constitutional source of that doctrine, see *Kulko* v. *Superior Ct. of Cal.*, 436 U.S. 84, 91 (1978). To obtain personal jurisdiction over Ronald, Ohio brought into play two hooks: a long-arm statute, Ohio Rev. Code Ann. § 2307.382 (Baldwin 1994), which on its own text did not quite reach but under Ohio decisional law is complemented by Ohio Rev. Code Ann. Civ. R. 4.3(A)(8) (Baldwin 1995). See *Fraiberg* v. *Cuyahoga County Ct. of Common Pleas*, 76 Ohio St. 3d 374, 376 (1996). Rule 4.3(A)(8) allows service to be made on out-of-State individuals for claims arising from a person

> "[l]iving in the marital relationship within this state notwithstanding subsequent departure from this state, as to all obligations arising for spousal support, custody, child support, or property settlement, if the other party to the marital relationship continues to reside in this state."

This satisfies the statutory basis for long-arm jurisdiction. See *Good Hope Indus., Inc.* v. *Ryder Scott Co.*, 378 Mass. 1, 5-6 (1979). There was sufficient notice to Ronald; that is conceded. It remains to consider whether Ohio had established sufficient connection with the nonresident defendant. *Kulko* v. *Superior Ct. of Cal., supra.* Ronald was married in Ohio and lived there with his family for two to three years. Those were actions by which Ronald availed himself of the benefits and protection, as well as the strictures, of the laws of Ohio. See *Windsor* v.

*Windsor*, 45 Mass. App. Ct. at 652. He signed an agreement for judgment in the Dudley District Court on June 15, 1994, to make support payments in accordance with the Ohio order of 1991. Over the preceding three years he had made some payments in accordance with the Ohio order. The connection of the early years of the marriage and the agreed to connection of Ronald with the Ohio support order were sufficient contact points to satisfy the requirements of *International Shoe Co.* v. *Washington*, 326 U.S. 310, 316-317 (1945). See *Hostetler* v. *Kennedy*, 69 Ohio App. 3d at 302; *Fraiberg* v. *Cuyahoga County Ct. of Common Pleas*, *supra* at 378. Compare, in quite a different factual context but applying the same underlying principles, *Connecticut Natl. Bank* v. *Hoover Treated Wood Products, Inc.*, 37 Mass. App. Ct. 231, 233-236 (1994). Contrast *Windsor* v. *Windsor*, *supra* at 653.

For these reasons, the Ohio divorce judgment is valid and it renders the Massachusetts divorce judgment a nullity.

3. *The child support orders.* On May 23, 1997, DOR filed with the Probate Court the child and spousal support orders contained in the Ohio divorce judgment for the purpose of registering them with the Probate Court under UIFSA. See G. L. c. 209D, § 6-602(*a*).[10] Although § 6-602 speaks in terms of "requesting registration" (G. L. c. 209D, § 6-602[*a*][1]), the request is not one which may be turned down. The statute in § 6-602(*b*) provides that:

> "On receipt of a request for registration, the registering tribunal shall cause the order to be filed as a foreign judgment, together with one copy of the documents and information [the documents and information required are set out in subparagraph (*a*) of § 6-602], regardless of their form."

It is the duty of the registering tribunal under § 6-605 to notify the nonregistering party — in this case Ronald. Unless there is a successful defense to the registration of the support order based on statutory grounds set forth in § 6-607, the registering

---

[10]See G. L. c. 209D, § 1-101(14): " 'Register' means to file a support order or judgment determining parentage in a tribunal."

tribunal shall enforce the foreign State's order.[11]

The Probate Court, therefore, was not free under UIFSA to disregard the Ohio judgment. None of the defenses set out in § 6-607(*a*), for example, lack of personal jurisdiction over the contesting party by the issuing party, that the issuing tribunal had stayed the order, that the order had been obtained by fraud, or that full payment had been made, pertained to Ronald. See *Peddar* v. *Peddar*, 43 Mass. App. Ct. 192, 195 (1997).[12] See also *Child Support Enforcement Div. of Alaska* v. *Brenckle*, 424 Mass. 214, 221-222 & n.14 (1997). As set forth in G. L. c. 209D, § 2-207(*a*)(3):

> "If two or more tribunals have issued child support orders for the same obligor and child . . . an order issued by a tribunal in the current home state of the child must be recognized . . . ."[13]

It is not disputed that the home State of the Mannor children is Ohio; that is where they "lived with a parent or a person acting as a parent for at least six consecutive months immediately preceding" Michelle's filing of her action in Ohio. G. L. c. 209D, § 1-101(4).

4. *The role played by the Probate Court judge's finding that the children were at risk.* The apparent reason for the Probate Court judge's disregard of the Ohio judgment was that the children were at risk with the mother. It will be recalled that Michelle had made a bad impression on the Probate Court judge. To the extent that there is the germ of a basis for the judge's

---

[11]The support order which had been registered with and enforced by the Dudley District Court was superseded by the new orders contained in the divorce judgment. See G. L. c. 209D, § 6-607(*a*)(3).

[12]Ohio adopted the Uniform Interstate Family Support Act in 1996. See Ohio Rev. Code Ann. § 3115 (Supp. 1998). Prior to that, the Revised Uniform Reciprocal Enforcement of Support Act was in effect in Ohio.

[13]This section of UIFSA was rewritten by St. 1998, c. 64, § 260, and now provides, in G. L. c. 209D, § 2-207(*b*)(2):

> "if more than one of the tribunals would have continuing, exclusive jurisdiction under this chapter, an order issued by a tribunal in the current home state of the child shall control and shall be so recognized; provided, however, that if an order has not been issued in the current home state of the child, the order most recently issued shall control and shall be so recognized."

Under either version of the statute, the Ohio support order controls.

disregard of the Ohio judgment, it lies in § 2(*a*)(3) of the Uniform Child Custody Jurisdiction Act (G. L. c. 209B). That paragraph provides that if a child is physically present in the Commonwealth and —

> "It is necessary in an emergency to protect the child from abuse or neglect or for other good cause shown . . . then a court exercising jurisdiction pursuant to this clause of paragraph (3) may do so only by entering such *temporary* order or orders as it deems necessary unless the court of the other state has declined to exercise jurisdiction, has stayed its proceedings or has otherwise deferred to the jurisdiction of a court of the commonwealth." (Emphasis supplied.)

The Ohio court did not so decline, stay, or defer and, in fact, took a quite different view of what was in the best interests of the children. Rather, the Ohio court proceeded to a final divorce judgment, including custody and support orders. Whatever temporary jurisdiction the Probate Court judge might have had under G. L. c. 209B, § 2(*a*)(3), could not trump a final and valid divorce judgment from Ohio. See *Murphy* v. *Murphy*, 380 Mass. 454, 459 (1980). See also *MacDougall* v. *Acres*, 427 Mass. 363, 369-370 (1998) (a Massachusetts judge may only make temporary orders during the *pendency* of a child custody case in another State); *Umina* v. *Malbica*, 27 Mass. App. Ct. 351, 359 (1989).

The judgment of divorce entered in the Probate Court is vacated. The order of the Probate Court dismissing DOR's request for registration and enforcement of the support orders in the Ohio divorce judgment is vacated, and an order shall be entered in the Probate Court enforcing the Ohio support orders.

*So ordered.*