DEPAULITTE, Appellee,

v.

DEPAULITTE, Appellant.

[Cite as *Depaulitte v. Depaulitte* (2000), 138 Ohio App.3d 780.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 17847.

Decided Jan. 28, 2000.

*David R. Schmidt,* for appellee.

*Richard W. Schulte,* for appellant.

---

WOLFF, Judge.

Brian E. Depaulitte appeals from a judgment of the Montgomery County Court of Common Pleas, which overruled his motion to set aside a judgment of the court on the grounds that it had lacked personal jurisdiction over him.

The facts and procedural history relevant to this appeal are as follows.

Brian and Jacqueline Depaulitte were married in Brooklyn, New York, in 1977. Because Mr. Depaulitte served in the United States Air Force, the couple lived in various places during their marriage. In 1995, the couple lived in Wyoming and owned real property there. Mr. Depaulitte filed a complaint for divorce in Wyoming in March 1995, but the matter was dismissed before it was finalized. In the summer of 1995, when Mr. Depaulitte was about to begin a tour of duty in Japan, Mrs. Depaulitte learned of a job opportunity connected with Wright Patterson Air Force Base, and the couple spent a week in the Dayton area looking for a house. Although the Depaulittes made an offer on a house that was accepted, they did not complete the purchase nor did they purchase any other

property as a result of the trip. Subsequently, Mr. Depaulitte went to Japan, Mrs. Depaulitte moved to Dayton, and the couple never lived together again. In fact, although Mr. Depaulitte has retired from the Air Force, he continues to live and work in Japan.

In February 1997, Mrs. Depaulitte filed a complaint for divorce in the Montgomery County Court of Common Pleas. In January 1998, the trial court found that it had subject matter jurisdiction over the matter and personal jurisdiction over the parties, and it entered a decree of divorce and orders relating to spousal support, child support, visitation, and property division. Mr. Depaulitte did not participate in the divorce proceedings. Mrs. Depaulitte's attorney sent a copy of the divorce decree to Mr. Depaulitte, which he returned with questions and comments. Then, in July 1998, Mr. Depaulitte filed a motion to set aside judgment pursuant to Civ.R. 60(B) on the basis that the trial court had lacked personal jurisdiction over him.

In January 1999, the trial court conducted a hearing on Mr. Depaulitte's Civ.R. 60(B) motion. Mr. Depaulitte was not present at the hearing, but he was represented by counsel. Mrs. Depaulitte was the only witness to testify at the hearing. She testified that she and Mr. Depaulitte had visited Ohio together for a week in 1995 to look for a house, but that they had never lived here together. She also testified about Mr. Depaulitte's contact with her attorney about the case, which consisted of returning the divorce decree to the attorney with questions and comments in the margins.

In June 1999, the trial court found that its decree of divorce was "not entirely void for lack of personal jurisdiction." The trial court found that it had lacked personal jurisdiction over the division of Mr. Depaulitte's military pension pursuant to the more specific jurisdictional requirements of the Uniformed Services Former Spouses Protection Act, Section 1408, Title 10, U.S.Code, but that it had otherwise possessed personal jurisdiction over him.

Mr. Depaulitte raises one assignment of error on appeal.

"Brian Depaulitte's one week visit to the state of Ohio was insufficient contact to warrant exercise of *in personum* jurisdiction over him and therefore, the court below had no jurisdiction to render any judgments or orders regarding support payments."

Mr. Depaulitte claims that his contacts with Ohio were insufficient for an Ohio court to exercise personal jurisdiction over him. He does not dispute that the court had jurisdiction to enter the decree of divorce, but he asserts that the court violated his due process rights when it ordered him to pay support without personal jurisdiction over him.

■ The United States Supreme Court has held that one may not be subject to another state's jurisdiction unless he has established certain "minimum contacts" with the state such that being required to defend a lawsuit there does not offend "traditional notions of fair play and substantial justice." *Internatl. Shoe Co. v. Washington* (1945), 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102. For purposes of this case, Civ.R. 4.3(A) is the applicable long-arm statute. See *Cornelius v. Cornelius* (Nov. 5, 1999), Darke App. No. 99CA1494, unreported, 1999 WL 999798 (quoting *Fraiberg v. Cuyahoga Cty. Court of Common Pleas, Domestic Relations Div.* (1996), 76 Ohio St.3d 374, 667 N.E.2d 1189, as to the relationship of R.C. 2307.382(A) and Civ.R. 4.3(A) and the primacy of Civ.R. 4.3 should the two conflict). Civ.R. 4.3(A) provides:

"Service of process may be made out of this state, as provided in this rule, in any action in this state, upon a person who, at the time of service of process, is a nonresident of this state * * *. 'Person' includes an individual, * * * who, acting directly or by an agent, has caused an event to occur out of which the claim that is the subject of the complaint arose, from the person's:

"* * *

"(8) Living in the marital relationship within this state notwithstanding subsequent departure from this state, as to all obligations arising for spousal support, child support, or property settlement, if the other party to the marital relationship continues to reside in this state[.]"

■ To properly exercise jurisdiction over an out-of-state defendant, a trial court must find that one of the circumstances specified in Civ.R. 4.3(A) has been fulfilled. *Hudgins v. Hudgins* (1992), 80 Ohio App.3d 707, 715, 610 N.E.2d 582, 587–588, citing *Ohio State Tie & Timber, Inc. v. Paris Lumber Co.* (1982), 8 Ohio App.3d 236, 238, 8 OBR 309, 310–311, 456 N.E.2d 1309.

In this case, the trial court found that it had had personal jurisdiction pursuant to Civ.R. 4.3(A)(8) because the parties had "liv[ed] in the marital relationship within this state." The trial court based its decision upon the following facts: (1) Mr. Depaulitte had stayed with Mrs. Depaulitte in the state for one week while looking for a new residence, (2) Mr. Depaulitte had communicated with Mrs. Depaulitte's Ohio attorney and had returned the divorce decree to her with suggested changes, (3) Ohio was "the last place the parties stayed as a married couple prior to their separation", and (4) Mrs. Depaulitte continued to live in Ohio after the separation. For the following reasons, we find that these factors were insufficient to establish the minimum contacts necessary for personal jurisdiction.

■ In our view, visiting Ohio as a couple, without more, is not enough to establish minimum contacts with Ohio pursuant to Civ.R. 4.3(A)(8). The fact that

the Depaulittes looked into purchasing a new home during their visit does not change the fact that they were visiting, not living in, Ohio at that point. Moreover, we question whether Mrs. Depaulitte could be deemed to have "continue[d] to reside" in the state for purposes of Civ.R. 4.3(A)(8) when she did not, in fact, reside in the state prior to, at the time of, or immediately after the visit in question. See *Hudgins,* 80 Ohio App.3d at 718, 610 N.E.2d at 589–590 (husband's infrequent trips to Ohio during marriage as required by his employer did not constitute residency for jurisdictional purposes); *Cornelius, supra* (visiting Ohio to attend a high school graduation did not constitute living in the marital relationship in Ohio); *Murden v. Murden* (Aug. 18, 1989), Clark App. No. 2553, unreported, 1989 WL 94533 (husband's occasional visits to Ohio, where estranged wife had moved upon parties' separation, did not establish that they had lived in the marital relationship in Ohio).

As the trial court noted, the Supreme Court has rejected the view that Civ.R. 4.3(A)(8) applies only if both spouses are domiciled in Ohio when the nonresident defendant leaves Ohio. *Fraiberg,* 76 Ohio St.3d at 377, 667 N.E.2d at 1192–1193. However, *Fraiberg* does not stand for the proposition that the defendant's domicile is irrelevant to the issue of minimum contacts. In *Fraiberg,* the Supreme Court affirmed the trial court's finding that it possessed personal jurisdiction pursuant to Civ.R. 4.3(A)(6) (owning real property in the state) and Civ.R. 4.3(A)(8) where the parties had been born, raised, and married in Ohio, had raised their children in Ohio, and where the defendant husband had operated a business in Ohio. The "vast majority" of the parties' assets were located in Ohio, including the home in which the wife lived, and the wife alleged that the husband had perpetrated acts of extreme cruelty against her in Ohio. *Id.* at 378, 667 N.E.2d at 1193. Although the parties had moved to Florida in the months preceding their separation, they had spent a significant amount of time in Ohio even after this move and the wife had remained here after the separation. Indeed, the defendant in *Fraiberg* did not even argue that he had lacked minimum contacts with Ohio. *Id.* Rather, he argued that jurisdiction could not be established pursuant to Civ.R. 4.3(A)(8) where neither party was domiciled in Ohio. Thus, *Fraiberg* does not support the conclusion that the trial court had personal jurisdiction over Mr. Depaulitte based on his visit to the state.

In our view, the trial court's reliance on Mr. Depaulitte's contact with Mrs. Depaulitte's attorney and on his attempt to purchase property here as bases for personal jurisdiction was also misplaced. Neither of these factors establishes jurisdiction pursuant to Civ.R. 4.3(A). Taking preliminary steps to purchase property to be used as a marital home does not, in itself, establish a marital

home, especially where the purchase is not completed. Moreover, the uncompleted purchase in this case does not constitute "[h]aving an interest in, using, or possessing real property" pursuant to Civ.R. 4.3(A)(6). We also find no support for the proposition that a state may exercise personal jurisdiction over someone simply because that person has contacted an attorney in the state. *Lella v. Lella* (Dec. 15, 1997), Butler App. No. CA97–03–069, unreported, 1997 WL 778996, a case relied upon by the trial court, is distinguishable in this regard. In *Lella*, the court found that Ohio had personal jurisdiction over a defendant husband who had "entered into [an] interim property settlement agreement with full knowledge that his children would be residing in Ohio, that he would be paying child support in Ohio, and that he would have substantial visitation with his children in Ohio." *Id.* The defendant had also conducted his relationship with his children primarily in the state of Ohio, appeared in court in Ohio, and actively negotiated a settlement agreement in the Ohio proceedings. *Id.* In other words, the defendant in *Lella* had been actively involved in negotiations with his wife in Ohio, in the Ohio court proceedings, and in a relationship with his children in Ohio. *Lella* does not support the conclusion that a defendant such as Mr. Depaulitte, who was not involved with his child in Ohio and did not participate in the negotiation of the terms of the Ohio divorce decree *before* it was entered, was subject to personal jurisdiction in Ohio.

Mr. Depaulitte's assignment of error is sustained.

The order of the trial court will be affirmed insofar as it granted the parties a divorce, but it will be reversed and vacated in all other respects.

*Judgment accordingly.*

GRADY, P.J., and FAIN, J., concur.