OPINION
{¶ 1} Defendant-appellant, Charles J. Kvinta, and third-party defendant-appellant, Mary Kvinta, appeal, and plaintiff-appellee, Anita J. Kvinta, cross-appeals from a July 19, 2002 judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, granting plaintiff a legal separation from defendant and awarding plaintiff marital real estate as payment for spousal support.
 {¶ 2} On January 9, 1995, plaintiff filed a complaint against defendant for legal separation. Following plaintiff's service of process on defendant in Kuwait, where he lived and worked, defendant moved to dismiss the complaint for (1) lack of jurisdiction over the subject matter because plaintiff could not establish the existence of a common law marriage, (2) lack of personal jurisdiction over defendant, and (3) insufficiency of service of process. The trial court found: (1) a common law marriage existed between the parties as of September 1981, (2) defendant was properly served by ordinary mail pursuant to Civ.R. 4.6(D), and (3) the court had personal jurisdiction over defendant pursuant to Civ.R. 4.3(A)(6) based on defendant's acknowledged ownership of real property in Mansfield, Ohio. Because it found personal jurisdiction under Civ.R. 4.3(A)(6), the court did not determine whether it also had personal jurisdiction pursuant to Civ.R. 4.3(A)(8).
 {¶ 3} On defendant's appeal from an April 19, 1999 contempt judgment of the trial court, this court affirmed the trial court's finding that service of process had been perfected on defendant by ordinary mail pursuant to Civ.R. 4.6(D). Kvinta v. Kvinta (Feb. 22, 2000), Franklin App. No. 99AP-508 ("Kvinta I"). However, this court held the trial court erred in finding personal jurisdiction pursuant to Civ.R. 4.3(A)(6) because, even though plaintiff "has sought a division of property [in this legal separation action], the action is not one arising from [defendant's] interest in, possession, or use of the real property in Mansfield, Ohio." Id. This court remanded for the trial court to determine if personal jurisdiction existed over defendant pursuant to Civ.R. 4.3(A)(8).
 {¶ 4} On remand, the trial court concluded it lacked personal jurisdiction over defendant pursuant to Civ.R. 4.3(A)(8). Because it found no personal jurisdiction existed, the court vacated its prior contempt judgment against defendant and dismissed plaintiff's complaint for legal separation. (Mar. 9, 2001 Decision.) However, after sustaining plaintiff's motion for new trial, the trial court found it had in rem jurisdiction over the parties' marital status and the Mansfield, Ohio real property, and the court reinstated plaintiff's legal separation action. Following a two-day trial, the trial court issued a final judgment on July 19, 2002, granting plaintiff a legal separation and awarding her the Mansfield property as spousal support payment.
 {¶ 5} Defendant Charles Kvinta and third-party defendant Mary Kvinta appeal from the judgment of legal separation. Defendant Charles Kvinta assigns the following errors:
 {¶ 6} "1. The trial court erred by refusing to hear evidence on the issue of common law marriage at the trial on the merits conducted April 24-25, 2002.
 {¶ 7} "2. The trial court (Judge S. Brown) erred in failing to recognize, in ruling on objections to a magistrate's report overruling defendant's motion to dismiss that the burden of proof to prove a common law marriage in Ohio judicial proceeding (clear and convincing evidence) was applicable to this case.
 {¶ 8} "3. The court erred in ruling the evidence presented to the magistrate for consideration of defendant's motion to dismiss affirmatively proved a common law marriage by clear and convincing evidence.
 {¶ 9} "4. The trial court erred in ruling that the presence of real estate in Ohio gave the court in rem jurisdiction in a separate maintenance action to terminate defendant's ownership interest in the real estate.
 {¶ 10} "5. The trial court erred in ruling that a pretrial motion must be filed before the court could consider a de facto termination date other than trial date and that the defendant had not presented sufficient evidence as to that issue at trial when the court had made a finding in its March 9, 2001 judgment entry that the marital relation was ended in 1989 or 1990.
 {¶ 11} "6. The trial court abused its discretion by awarding to plaintiff 100% of the real estate owned by defendant and third party defendant, Mary Kvinta.
 {¶ 12} "7. The trial court erred in granting plaintiff's motion for new trial from the decision and judgment granting defendant's motion to dismiss plaintiff's case."
 {¶ 13} Third-party defendant Mary Kvinta assigns the following errors:
 {¶ 14} "[1.] The trial court erred when it concluded that Mary Kvinta had voluntarily submitted herself to the court's jurisdiction and had waived her right to present defenses under Civ.R. 12.
 {¶ 15} "[2.] The trial court erred by awarding the real property of Mary Kvinta to the plaintiff, where Mary Kvinta was no longer a party to the case.
 {¶ 16} "[3.] The trial court erred by making a declaration regarding the status of the plaintiff as the common law wife of Charles Kvinta and choosing a date of termination that nullifies Mary Kvinta's status as the wife of the Charles Kvinta, in violation of her right to due process under the Ohio and United States Constitutions."
 {¶ 17} In her cross-appeal from the judgment granting legal separation, plaintiff Anita Kvinta assigns the following errors:
 {¶ 18} "1. The trial court erred as a matter of law when it found that personal jurisdiction over Mr. Kvinta did not exist.
 {¶ 19} "2. The trial court committed error and abused its discretion as a matter of law when it found that personal jurisdiction could not exclusively exist pursuant to Civ.R. 4.3(A)(6)."
 {¶ 20} As an initial matter, in a motion filed with this court, plaintiff contends third-party defendant Mary Kvinta failed to comply with App.R. 3(D) by failing to designate the May 17, 1999 order she is appealing. Because Mary Kvinta's first assignment of error is predicated on the May 17, 1999 order, but her notice of appeal designates only the trial court's July 19, 2002 final judgment as the order appealed, plaintiff contends Mary Kvinta's first assignment of error should be dismissed. App.R. 3(D) provides a notice of appeal "shall designate the judgment, order or part thereof appealed from." Interlocutory orders, however, are merged into the final judgment, and thus, an appeal from the final judgment includes all interlocutory orders merged with it. Bard v. Society Natl. Bank (Sept. 10, 1998), Franklin App. No. 97APE11-1497. Because the May 17, 1999 order did not dispose of all the claims between the parties and did not contain an express determination that there was no just reason for delay, the order was interlocutory. Civ.R. 54(B); Id. Accordingly, it merged into the July 19, 2002 final judgment and did not need to be separately identified in the notice of appeal. Plaintiff's motion to dismiss Mary Kvinta's first assignment of error is denied.
 {¶ 21} As to the assignments of error raised by the parties, we first address defendant Charles Kvinta's seventh assignment of error, in which defendant asserts the trial court erred in granting plaintiff's Civ.R. 59(A)(7) motion for new trial from the trial court's March 9, 2001 decision and judgment entry dismissing plaintiff's complaint due to lack of personal jurisdiction over defendant. Defendant contends plaintiff's motion for new trial is not a proper response to the trial court's judgment sustaining defendant's Civ.R. 12(B)(2) motion to dismiss plaintiff's complaint. According to defendant, the court's ruling on the motion to dismiss did not constitute a "trial" pursuant to the Ohio Rules of Civil Procedure, and the trial court thus should have denied plaintiff's motion for new trial.
 {¶ 22} We preliminarily note that defendant's challenge to the trial court's order granting plaintiff's motion for a new trial is not timely. Pursuant to App.R. 5(B), the time for appealing that order began to run when the order was entered. Because defendant did not appeal within 30 days of that order, we lack the jurisdiction to address the merits of defendant's seventh assignment of error. See, also, R.C.2505.02(B)(3). Accordingly, defendant's seventh assignment of error is dismissed.
 {¶ 23} Defendant's first three assignments of error together assert the trial court erred in finding a common law marriage existed between plaintiff and defendant. Specifically, defendant contends the trial court (1) failed to recognize that clear and convincing evidence is the appropriate burden of proof to prove a common law marriage, (2) erred in ruling that the evidence presented to the magistrate affirmatively proved a common law marriage by clear and convincing evidence, and (3) erred in refusing to hear evidence on the issue of common law marriage at the trial on the merits conducted on April 24 and 25, 2002.
 {¶ 24} Under R.C. 3105.12(B)(3), a common law marriage is valid in Ohio if it came into existence in another state that recognizes the validity of common law marriages in accordance with the laws of that state. Here, plaintiff alleged her common law marriage with defendant came into existence in Kansas. Therefore, following R.C. 3105.12(B)(3)'s directive, the trial court appropriately looked to Kansas law to determine if plaintiff and defendant had established a valid common law marriage in that state.
 {¶ 25} Not able to ascertain the degree of proof necessary to establish a common law marriage under Kansas law, the trial court, as the parties urged, expressly applied Ohio's standard of clear and convincing evidence to determine whether a common law marriage existed. (Mar. 24, 1998 Decision, 7-8.) See Nestor v. Nestor (1984), 15 Ohio St.3d 143, 146
(determining the elements of a common law marriage must be established by clear and convincing evidence). Thus, contrary to defendant's contention, the trial court did apply the clear and convincing standard of proof. To the extent the court erred in using a "clear and convincing" standard of proof rather than some other standard of proof, defendant has waived any error because (1) he urged the trial court to use that standard of proof, and (2) he contends here it was the correct standard of proof to apply in determining whether a common law marriage existed.
 {¶ 26} With regard to defendant's second contention, the trial court did not err in its March 24, 1998 decision in finding clear and convincing evidence of a common law marriage between plaintiff and defendant. In Kansas, the elements necessary for a common law marriage are: (1) capacity of the parties to marry, (2) a present marriage agreement between the parties, and (3) a holding out of each other as husband and wife to the public. In re Estate of Antonopoulos (1999),268 Kan. 178, 192-193, 993 P.2d 637. Defendant does not dispute that sufficient evidence was presented to establish the first and third elements, but he contends clear and convincing evidence was not presented to prove the second element, a present agreement between the parties to enter into a common law marriage.
 {¶ 27} Kansas law does not require a marriage agreement between the parties to be in any particular form. In re Estate of Keimig (1974),215 Kan. 869, 872, 528 P.2d 1228. Moreover, the Kansas Supreme Court has held a marriage agreement between the parties may be shown by circumstantial evidence. Fleming v. Fleming (1977), 221 Kan. 290, 291,559 P.2d 329.
 {¶ 28} Evidence was presented at the magistrate's hearing that defendant called plaintiff in 1981 and asked her and their children to join him in Kansas to restart their relationship. Plaintiff testified she and defendant made a commitment to each other to restart their marriage and they continued with their lives "like [they] were before." (Tr. 19.) Although defendant argues that "like [they] were before" means he and plaintiff resumed cohabitating, no evidence was presented that the parties ever cohabitated outside of marriage before 1981. Therefore, an inference can reasonably be made that a commitment to live "like [they] were before" refers to a commitment to live in a marital relationship, as the parties previously had between 1966 and 1979.
 {¶ 29} Defendant's own writings in 1981 also present evidence of his intent to be married to plaintiff at that time. In October 1981, defendant wrote a journal in which he repeatedly referred to plaintiff as his "wife," and he wrote a letter to plaintiff in which he referred to "our marriage," signing the letter "your husband."
 {¶ 30} Additionally, after plaintiff's move to Kansas, the actions of plaintiff and defendant are consistent with the actions of a husband and wife: defendant moved several times due to his job, and plaintiff and their children moved and resided with him in Texas, Oklahoma, and Cyprus; plaintiff and defendant were listed as husband and wife in parish books in Kansas, Oklahoma, and Ohio; they maintained a sexual relationship that, according to plaintiff, was monogamous; and defendant designated plaintiff as his wife and beneficiary on insurance policies.
 {¶ 31} The foregoing evidence supports the magistrate's and trial court's finding that a present marriage agreement existed between plaintiff and defendant in 1981. The other elements of a common law marriage not being in dispute, the trial court did not err in finding a valid common law marriage between plaintiff and defendant beginning in 1981, and in entering judgment accordingly. (Mar. 24, 1998 Decision and Judgment Entry.)
 {¶ 32} Despite the trial court's express finding in its March 24, 1998 decision and judgment entry that a common law marriage existed between plaintiff and defendant, defendant contends the trial court erred at the trial conducted on April 24 and 25, 2002, in refusing to hear evidence on the issue and to reconsider its previous finding. Because the March 24, 1998 decision and judgment entry was an interlocutory order rather than a final judgment in the case, the trial court retained jurisdiction at trial to reconsider its prior decision that a common law marriage existed between plaintiff and defendant. Featherstone v. CM Media, Inc., Franklin App. No. 02AP-65, 2002-Ohio-6747, appeal not allowed (2003), 98 Ohio St.3d 1491.
 {¶ 33} Defendant does not contend he did not have a full opportunity at the May 16, 1996 evidentiary hearing to present evidence a common law marriage did not exist between plaintiff and defendant. Nor has he identified any evidence not presented at that hearing that would have been produced at trial to refute the court's finding, journalized in its March 24, 1998 decision and judgment entry, that a common law marriage existed between plaintiff and defendant. Additionally, defendant has demonstrated no prejudice, such as how the result at trial would have been different if the trial court had reconsidered the issue. Thus, defendant has not shown the trial court erred in adhering to the prior ruling that a common law marriage existed. Accordingly, because defendant has failed to demonstrate the trial court erred in finding clear and convincing evidence of a common law marriage between plaintiff and defendant, defendant's first three assignments of error are overruled.
 {¶ 34} Defendant's fifth assignment of error is directed to the trial court's finding in its July 19, 2002 final judgment that the marital relationship terminated on April 23, 2002, the date of the final hearing on plaintiff's complaint for legal separation. Defendant asserts the court should have found a de facto termination date of 1989 to 1990, which the trial court cited in its March 9, 2001 decision and judgment entry as the time when plaintiff and defendant separated and their marriage "essentially ended."
 {¶ 35} In cases of divorce and legal separation, we presume the date of the final hearing is the appropriate termination date of the marital relationship. However, the trial court, in its discretion, may select a de facto termination date. R.C. 3105.171(A)(2)(a) and (b); Bowen v. Bowen (1999), 132 Ohio App.3d 616, 630; Badovick v. Badovick (1998),128 Ohio App.3d 18, 31.
 {¶ 36} Initially, defendant contends the trial court erred in ruling a pretrial motion must be filed before the court would consider a de facto termination date. Contrary to defendant's contention, the trial court did not affirmatively rule it would not consider a de facto termination date because defendant failed to file a motion requesting same. Rather, the court considered the issue, even though it noted defendant did not file a motion for the court to establish a de facto termination date. After finding defendant did not present sufficient evidence at the final hearing to establish a de facto termination date, the court found the marriage terminated on the date of the final hearing, in accord with the statutory presumption of R.C.3105.171(A)(2)(a). (July 19, 2002 Decision and Judgment Entry, 6.)
 {¶ 37} Next, defendant maintains the trial court, in selecting the date of the final hearing as the termination date of the common law marriage, improperly disregarded its March 9, 2001 judgment entry in which it already had determined the marital relationship ended in 1989 to 1990.
 {¶ 38} Without question, the trial court stated in its March 9, 2001 decision and judgment entry that plaintiff and defendant's marriage "essentially ended" and the parties separated sometime in late 1989 to mid-1990. The statements, however, were made in conjunction with the court's finding that it lacked personal jurisdiction over defendant and were not the trial court's express findings pursuant to R.C. 3105.171
regarding the duration of the marriage. Further, even if the court found plaintiff and defendant had separated and the marriage "essentially ended" in 1989 or 1990, the court acted within its discretion in selecting the date of trial, rather than the earlier date of separation, as the date the marital relationship legally terminated pursuant to R.C. 3105.171. Bowen, supra; Stafinsky v. Stafinsky (1996), 116 Ohio App.3d 781
(determining a trial court does not abuse its discretion in choosing the final hearing date rather than the date of separation as the date a marriage terminates). Accordingly, defendant's fifth assignment of error is overruled.
 {¶ 39} Third-party defendant, Mary Kvinta, also takes issue with the marital termination date the trial court selected. Defendant purported to marry Mary Kvinta sometime before February 1997, when defendant conveyed an interest in the Mansfield property to her as his "wife." In her third assignment of error, Mary Kvinta asserts the trial court's decision not choosing an earlier de facto termination date nullified her status as Charles Kvinta's new "wife," thus depriving her of the incidents and benefits flowing from the marriage.
 {¶ 40} Although Mary and Charles Kvinta contend they are married, the record reflects no documentary or testimonial evidence that establishes, and no affirmative finding of the trial court that recognizes, the existence of a valid marriage between Charles Kvinta and Mary Kvinta. Moreover, absent evidence in the record to that effect, Mary Kvinta has not shown the trial court was under any obligation to consider her purported marriage to Charles Kvinta when it selected the marital termination date in plaintiff's legal separation action. Accordingly, third-party defendant Mary Kvinta's third assignment of error is overruled.
 {¶ 41} Defendant Charles Kvinta's fourth and sixth assignments of error together assert the trial court erred in awarding real estate located in Mansfield, Ohio, to plaintiff.
 {¶ 42} R.C. 3105.171(B) provides that "[i]n divorce proceedings, the court shall, and in legal separation proceedings upon the request of either spouse, the court may, determine what constitutes marital property and what constitutes separate property. In either case, upon making such a determination, the court shall divide the marital and separate property equitably between the spouses, in accordance with this section. For purposes of this section, the court has jurisdiction over all property in which one or both spouses have an interest." (Emphasis added.) Pursuant to subsection (A)(3)(a) of the statute, "marital property" includes all real property currently owned by either spouse, or in which either spouse currently has an interest, that was acquired by either spouse during the marriage.
 {¶ 43} Defendant purchased and took sole title to the real property in Mansfield, Ohio, in 1992. Thereafter, plaintiff and some of the children lived on the Mansfield property as their home. Defendant worked and resided in Kuwait but stayed in the Mansfield home on his visits to the United States.
 {¶ 44} On January 9, 1995, when plaintiff filed her complaint for legal separation, she identified and claimed an interest in the Mansfield property and requested the court to award her a judgment of support as a charge against the property. In September 1995, plaintiff filed a notice of lis pendens in the Richland County Recorder's office, the county where the Mansfield property is located, attesting to her marital interest in the Mansfield property. Approximately two years later, in 1997, defendant executed and recorded a quitclaim deed granting third-party defendant Mary Kvinta, as his "wife," an undivided one-half interest in the Mansfield property and retaining an undivided one-half interest in the property for himself.
 {¶ 45} In its April 24, 2001 decision sustaining plaintiff's motion for new trial, the trial court found that although the court lacked personal jurisdiction over defendant, the court had in rem jurisdiction over the Mansfield property and could make an award of support to plaintiff from that property. In its final judgment of legal separation, the trial court (1) expressly found the Mansfield property to be "marital property" pursuant to R.C. 3105.171(A)(3)(a)(i) because defendant had acquired it during his marriage to plaintiff, (2) found defendant owed plaintiff a duty of support that could be satisfied from an award of the property, and (3) awarded plaintiff the property in its entirety. (July 19, 2002 Decision and Judgment Entry.)
 {¶ 46} Defendant argues the Mansfield property was his "separate" property because he purchased and held sole title to the property after he and plaintiff separated in 1989 or 1990. As noted, however, the trial court found, and this court has affirmed, plaintiff and defendant were still married at the time defendant purchased the property. One spouse's holding title to property individually does not determine whether the property is marital property or separate property. R.C. 3105.171(H). Rather, a presumption exists that property acquired during marriage is marital property. R.C. 3105.171(A)(3)(a)(i), Lust v. Lust, Wyandot App. No. 16-02-04, 2002-Ohio-3629. Because defendant purchased the Mansfield property during his marriage to plaintiff and he has not presented evidence overcoming a presumption the property is marital property, he has not shown the trial court abused its discretion in finding the Mansfield property to be marital property. Id.
 {¶ 47} Defendant next contends the trial court erred in ruling the presence of the real property in Ohio gave the court in rem jurisdiction to divest defendant of his ownership interest in the property. Defendant argues the court lacked authority in the legal separation action to terminate defendant's ownership interest in the property and award it to plaintiff as payment of spousal support where the court lacked personal jurisdiction over defendant.
 {¶ 48} A decree of divorce or legal separation is regarded as a judgment in rem because it determines the marital status, or res, of the parties. Hager v. Hager (1992), 79 Ohio App.3d 239, 243, citing McGill v. Deming (1887), 44 Ohio St. 645. Only one of the spouses must be domiciled in the state to give a court jurisdiction to terminate the parties' marriage. Id. A court has jurisdiction, pursuant to R.C. 3105.171(B), over all property in which one or both spouses have an interest and has the power to divide the property. Although a court in a divorce or legal separation proceeding must have personal jurisdiction over a nonresident defendant to render a personal or monetary judgment of support against the defendant, personal jurisdiction over the nonresident defendant is not required where the court obtains jurisdiction over the defendant's real property located within the state and applies the property to a support award. Reed v. Reed (1929), 121 Ohio St. 188; Benner v. Benner (1900), 63 Ohio St. 220; Meadows v. Meadows (1992), 73 Ohio App.3d 316,320. See, also, R.C. 3105.18(B) (providing an award of spousal support may be allowed in real property).
 {¶ 49} If a wife brings an action for support against her nonresident husband, seeking appropriation of the husband's real property situated within the state as payment of the requested support, the action is essentially an action in rem. Reed; Benner, supra. In such an action, the trial court has in rem jurisdiction to enter judgment awarding the property as spousal support, despite the court's lacking personal jurisdiction over the nonresident defendant, if the nonresident defendant has been duly served notice of the plaintiff's petition requesting the court to appropriate the property identified in the petition and to award the property as spousal support. Id. The property thereby is brought within the control and jurisdiction of the court, which has the power to adjust the parties' rights in the property as an incident of its power to grant a decree of divorce or legal separation. Reed, supra.
 {¶ 50} In this case, service of process of plaintiff's complaint for legal separation was made upon defendant, providing defendant notice of plaintiff's request to the trial court to appropriate the Mansfield, Ohio property and award it to plaintiff as support. The property thus properly was brought within the control and jurisdiction of the trial court, which then had the power to adjudicate the parties' rights in the property, including an award of the property to plaintiff as spousal support. R.C. 3105.171(B); Reed; Benner; and Meadows, supra.
 {¶ 51} Even if the court had jurisdiction to award the Mansfield property in this action, defendant contends the trial court abused its discretion in awarding plaintiff the Mansfield property in its entirety, where the court not only ignored R.C. 3105.171(C)(1)'s "requirement" that property be divided equally, but it failed to make written findings of fact supporting its award as required by R.C. 3105.171(G).
 {¶ 52} Contrary to defendant's contention, pertinent statutes create neither presumption nor requirement that marital property be divided equally. Instead, a potentially equal division is merely the starting point of the trial court's analysis before it considers other factors. Booth v. Booth (1989), 44 Ohio St.3d 142, 144-145; Cherry v. Cherry (1981), 66 Ohio St.2d 348, paragraph one of the syllabus. According to R.C. 3105.171(C)(1), marital property is to be divided equally unless doing so would be inequitable, in which case the court is to make an equitable division of the property. "[E]quitable does not necessarily mean equal." Ellars v. Ellars (1990), 69 Ohio App.3d 712,720. Instead, the trial court is accorded broad discretion in deciding what division of marital property is equitable under the facts and circumstances of the case. Cherry, at paragraph two of the syllabus. For the court to have abused its discretion, we look at the totality of the circumstances and determine whether the court acted unreasonably, arbitrarily or unconscionably in making its award. Kunkle v. Kunkle (1990), 51 Ohio St.3d 64, 67; Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
 {¶ 53} Here, due to the trial court's lack of personal jurisdiction over defendant, defendant's income and assets outside of Ohio were not subject to discovery or the court's jurisdiction. However, evidence produced at trial revealed defendant earned from $150,000 to $400,000 annually working overseas in the 1990's, while plaintiff had modest earnings during that period. Moreover, in his response to a request for admission, defendant, through counsel, acknowledged that between 1981 and January 1, 1995, he acquired a total interest in real and/or personal property valued in excess of $250,000 and less than $500,000.
 {¶ 54} Although the trial court did not have jurisdiction over defendant's assets outside of Ohio, the trial court did have jurisdiction over the Mansfield, Ohio home. The record shows defendant purchased the home for $124,000 in 1992, and the home was valued at $136,000 at the time of trial. Notably, the value of the real estate awarded to plaintiff was approximately half the value of defendant's acknowledged property interests. Thus, upon plaintiff receiving her award, an equal or greater portion of the purported property interests remained for defendant.
 {¶ 55} Even if, however, defendant did not receive an equal share of the parties' property, the court's division of the property was nevertheless equitable in light of: (1) the long duration of the marriage, (2) defendant's income, all of which was outside the reach of the court, and (3) defendant's conveyance of a one-half interest in the Mansfield property, in which plaintiff had a marital interest, to his purported new wife, Mary Kvinta. Because defendant made the conveyance during the pendancy of the legal separation proceedings after he was on notice of plaintiff's claim in the marital property, defendant's conveyance of the property interest arguably is a constructive or actual fraud upon plaintiff designed to defeat any rights she had in the marital property, although the trial court made no express finding in that regard. Leathem v. Leathem (1994), 94 Ohio App.3d 470, 473, appeal not allowed, 70 Ohio St.3d 1454. Under these circumstances, the trial court appropriately exercised its full equitable powers and jurisdiction in this matter, R.C. 3105.11, and acted within its discretion in awarding the Mansfield property to plaintiff in its entirety. Defendant's fourth and sixth assignments of error are overruled.
 {¶ 56} Third-party defendant Mary Kvinta also claims error regarding the court's award of the Mansfield property. Together, her first two assignments of error assert the trial court violated her right to procedural due process because she was not a proper party to the action when the trial court awarded her interest in the Mansfield property to plaintiff. Mary Kvinta contends she was not a proper party because she never voluntarily submitted herself to the court's jurisdiction or waived her right to present Civ.R. 12 defenses of lack of jurisdiction and insufficient service of process.
 {¶ 57} A court obtains personal jurisdiction over a defendant by (1) service of process, (2) the voluntary appearance and submission of the defendant to the court's jurisdiction, or (3) other acts the defendant commits which constitute a waiver of a jurisdictional defense. Maryhew v. Yova (1984), 11 Ohio St.3d 154, 156. Pursuant to Civ.R. 12(H), a defendant waives the affirmative defenses of lack of jurisdiction over the person or insufficiency of service of process unless the defenses are presented (1) by motion before pleading pursuant to Civ.R. 12(B), (2) affirmatively in a responsive pleading under Civ.R. 8(C), or (3) within an amended pleading under Civ.R. 15. State ex rel. The Plain Dealer Publishing Co. v. Cleveland (1996), 75 Ohio St.3d 31,33. The failure to utilize the prescribed methods results in a waiver of the affirmative defenses. Mills v. Whitehouse Trucking Co. (1974),40 Ohio St.2d 55, 60.
 {¶ 58} In this case, pursuant to plaintiff's request, Mary Kvinta was joined as a third-party defendant on June 22, 1998. Although she did not file an answer and the record does not reflect that personal service had been perfected upon her, Mary Kvinta, through counsel, filed three separate written motions with the trial court in September and October 1998: a September 25 motion to quash a subpoena served upon defendant Smith Barney, Inc. to obtain financial information regarding Mary Kvinta, a September 29 amended motion to quash the subpoena, and an October 13 motion to quash a request for production of documents served upon Mary Kvinta's counsel. The latter motion included a notice of special appearance by her counsel, but none of the motions included, and there was no separate filing of, a Civ.R. 12 motion to dismiss plaintiff's complaint based on lack of jurisdiction or insufficient service of process. In a May 17, 1999 order, the trial court denied all three of Mary Kvinta's motions and determined that, by filing the motions, she became a proper party to this action and waived her defenses under Civ.R. 12.
 {¶ 59} Special appearances, where a person would appear in an action without submitting to the court's jurisdiction, were abolished with the adoption of the Rules of Civil Procedure in Ohio. Maryhew, supra. The manner for presenting jurisdictional defenses, and waiver of such defenses, is now prescribed in Civ.R. 12. Here, because Mary Kvinta filed three written motions with the trial court without including or filing a separate Civ.R. 12(B) motion to dismiss the complaint based on lack of jurisdiction or insufficient service, she waived the jurisdictional defenses and voluntarily submitted herself to the court's jurisdiction. Mills; Maryhew, supra, at 158. Thus, she was a proper party to the action. Id. Cf. Maryhew, supra (finding two requests made orally, not in writing, by defendant's counsel, granted by the trial court, for leave to move or otherwise plead in an action where service was not perfected upon the defendant, did not constitute a waiver of the defendant's jurisdictional defenses).
 {¶ 60} Mary Kvinta next contends that, even if she was initially a proper party to this action, the trial court's March 9, 2001 decision and judgment entry dismissed her as a party when it dismissed plaintiff's complaint. Mary Kvinta maintains she was never re-joined in the action after the court granted plaintiff's motion for new trial on April 24, 2001 and reinstated the case.
 {¶ 61} The record reflects that subsequent to the trial court's reinstating the case, Mary Kvinta's counsel did not file any motions pursuant to Civ.R. 12(B) objecting to the court's reassertion of jurisdiction over Mary Kvinta. To the contrary, her counsel actively participated in the action and submitted to the trial court's jurisdiction by filing various written motions and supporting memoranda, approving a judgment entry, and appearing for the final trial on the merits, although her counsel did not participate in the trial proceedings.
 {¶ 62} Under the foregoing circumstances, Mary Kvinta is deemed to have submitted herself to the court's renewed jurisdiction over the case and waived any jurisdictional defenses she could have raised under Civ.R. 12(B) after the case was reinstated. Moreover, where her attorney had an opportunity to participate in the trial and defend her interests in the Mansfield property, Mary Kvinta was not denied procedural due process by the trial court's adjudication of the interests in the real property.
 {¶ 63} Accordingly, Mary Kvinta's first two assignments of error are overruled.
 {¶ 64} In the two assignments of error presented in her cross-appeal, plaintiff Anita Kvinta asserts the trial court erred in its March 9, 2001 decision in: (1) refusing to again consider, upon this court's remand, whether the trial court had personal jurisdiction over defendant pursuant to Civ.R. 4.3(A)(6) from defendant's owning real property in Ohio, and (2) finding it did not have personal jurisdiction over defendant Charles Kvinta pursuant to Civ.R. 4.3(A)(8) arising out of defendant's living in the marital relationship in Ohio.
 {¶ 65} Regarding Civ.R. 4.3(A)(6), plaintiff asserts this court's finding in Kvinta I, that the trial court did not have personal jurisdiction over defendant pursuant to Civ.R. 4.3(A)(6), was contrary to law and therefore should not have been followed on remand. Plaintiff's assertion is premised on her contention that the Ohio Supreme Court in a legal separation action in Fraiberg v. Cuyahoga Cty. Court of Common Pleas, Domestic Relations Div. (1996), 76 Ohio St.3d 374, found personal jurisdiction existed over the defendant in that case pursuant to Civ.R. 4.3(A)(6).
 {¶ 66} Initially, we note the Ohio Supreme Court dismissed an appeal of this court's decision in Kvinta I. Id., 89 Ohio St.3d 1427. Therefore, on remand, the trial court was bound to follow this court's decision in Kvinta I as the law of the case regarding Civ.R. 4.3(A)(6). See, e.g., Nolan v. Nolan (1984), 11 Ohio St.3d 1, 4.
 {¶ 67} Nonetheless, plaintiff's argument regarding Civ.R. 4.3(A)(6) is not well-founded. Contrary to plaintiff's contention, the Supreme Court in Fraiberg did not find personal jurisdiction existed pursuant to Civ.R. 4.3(A)(6). Rather, the court expressly decided that whether Civ.R. 4.3(A)(6) established personal jurisdiction in the legal separation action was rendered moot when the court found personal jurisdiction vested under Civ.R. 4.3(A)(8). Fraiberg at 379. The court therefore did not discuss whether Civ.R. 4.3(A)(6) could provide a basis for personal jurisdiction in a legal separation action. Id. Plaintiff's second assignment of error is overruled.
 {¶ 68} Plaintiff next asserts the trial court erred in its application of law and fact in determining Civ.R. 4.3(A)(8) does not confer personal jurisdiction over defendant.
 {¶ 69} Personal jurisdiction over a defendant is premised on that person's minimum contacts with the forum state "such that the maintenance of the suit does not offend `traditional notions of fair play and substantial justice.'" International Shoe Co. v. Washington (1945),326 U.S. 310, 316, 66 S.Ct. 154, 158, quoting Milliken v. Meyer (1940),311 U.S. 457, 463, 61 S.Ct. 339, 343. "`The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State * * *. [I]t is essential in each case that there be some act by which the defendant purposely avails [him]self of the privilege of conducting activities within the forum State * * *.'" Kulko v. California Superior Court (1978),436 U.S. 84, 93-94, 98 S.Ct. 1690, 1698, quoting Hanson v. Denckla (1958), 357 U.S. 235, 253, 78 S.Ct. 1228, 1240.
 {¶ 70} R.C. 2307.382, Ohio's long-arm statute, authorizes the exercise of personal jurisdiction over nonresident defendants. Civ.R. 4.3 provides for service and determines the "minimum contacts" necessary to effectuate that jurisdiction. Kvinta I, citing Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc. (1990), 53 Ohio St.3d 73, 75. Civ.R. 4.3(A)(8) states, in pertinent part:
 {¶ 71} "Service of process may be made outside of this state * * * in any action in this state, upon a person who, at the time of service of process, is a nonresident of this state or is a resident of this state who is absent from this state. `Person' includes an individual * * * who * * * has caused an event to occur out of which the claim that is the subject of the complaint arose, from the person's:
 {¶ 72} "* * *
 {¶ 73} "Living in the marital relationship within this state notwithstanding subsequent departure from this state, as to all obligations arising for spousal support, custody, child support, or property settlement, if the other party to the marital relationship continues to reside in this state[.]"
 {¶ 74} In determining the propriety of personal jurisdiction based on Civ.R. 4.3(A)(8), the dispositive issue is "whether the nonresident defendant lived in a marital relationship within the state to an extent sufficient to satisfy the minimum-contacts requirement of constitutional due process." Fraiberg at 377-378. The trial court's determination whether personal jurisdiction exists over a party is a question of law that we review de novo. Robinson v. Koch Refining Co. (June 17, 1999), Franklin App. No. 98AP-900.
 {¶ 75} According to evidence presented to the trial court, plaintiff and defendant were born and raised in Ohio, initially married in Ohio in 1966, had five children, and then divorced in Ohio in 1979, after which defendant left the state and moved frequently. At defendant's request in 1981, plaintiff and the minor children moved to Kansas, where plaintiff and defendant commenced a common law marriage. Thereafter, plaintiff and the children continued to live and move with defendant to Oklahoma, Texas, and Cyprus. In 1989, plaintiff left Cyprus and moved back to the United States, living in New Jersey and New York, while some of the children remained with defendant in Cyprus.
 {¶ 76} In 1991, defendant moved to Kuwait, where plaintiff visited but did not live. In 1991 or 1992, plaintiff and the minor children moved to Ohio, where defendant purchased a home in Mansfield for plaintiff and the children to live in and sent them money for living expenses. As they had in other places they lived, plaintiff and defendant joined a parish in Mansfield and attended some dinners, events and services together. Plaintiff testified defendant "visited" plaintiff and the children in Ohio during "vacations," usually twice a year for about a month each time, but he always returned to Kuwait where he worked and maintained a separate residence until plaintiff filed her complaint for legal separation. According to plaintiff, during visits to Ohio, defendant attended his son's baseball games, bought suits in Cincinnati, visited a doctor in Cleveland and a dentist in Columbus, and had intimate relations with plaintiff until she filed for legal separation in 1995. Plaintiff and defendant filed separate tax returns, with plaintiff filing as "single" and defendant filing as "head of household." Defendant received some mail at the Mansfield residence, but it was primarily "junk" mail.
 {¶ 77} Based upon the evidence, personal jurisdiction of defendant under Civ.R. 4.3(A)(8) has not been established. As the trial court properly concluded, while "defendant has been to Ohio only for visits since plaintiff's move here in 1992, he has not established residence in Ohio nor has he `lived in the marital relationship' in Ohio sufficient to establish `minimum contacts' necessary to establish jurisdiction over the person of defendant." (Mar. 9, 2001 Decision, 7-8.) Accordingly, plaintiff's remaining issue on cross-appeal is overruled.
 {¶ 78} Having denied plaintiff's motion, dismissed defendant's seventh assignment of error, and having overruled all remaining assignments of error, we affirm the trial court's final judgment in this case.
Motion denied; judgment affirmed.
BOWMAN and LAZARUS, JJ., concur.